## HIGGINS OIL & FUEL CO. et al. v. SNOW et al.

**(Circuit Court of Appeals, Fifth Circuit. February 25, 1902.)**

### No. 1,114.

1. **FEDERAL COURTS—FOLLOWING DECISIONS OF STATE COURTS—LIMITATION AND LACHES.**

    A federal court, although sitting in equity, may follow the rule of decision of the state courts upon the questions of limitation and laches.[1]

2. **EQUITY—LACHES—SUIT BASED ON LEGAL TITLE.**

    Under the rule of decision in Texas, where the title of a complainant to lands, upon which he bases his right to relief in equity, is a legal one, capable of being established at law, the doctrine of laches and stale claim does not apply, but his rights are barred only by adverse possession; and on general principles equity will follow the law on such question, where the jurisdiction is concurrent.

3. **JUDGMENTS—PERSONS CONCLUDED—PARTY BY REPRESENTATION.**

    A widow entitled under the laws of Texas to a life estate in one-third of real estate owned by her husband, which consisted of an undivided interest inherited from his father, is not bound by a compromise judgment entered in an action brought by her children and the other heirs of their grandfather against an adverse claimant, to which action she was not a party. The fact that her co-tenants might have recovered her interest in their own names did not render her a party by representation.

4. **ESTOPPEL—LIFE TENANT—ACCEPTANCE OF PROCEEDS OF SALE BY REMAINDER-MEN.**

    The acceptance by a married woman, as a gift from her children by a former marriage, of a part of the money received by them in payment for their interest in lands inherited from their father, in which she had a life estate under the laws of Texas, did not estop her from asserting her rights as life tenant as against the purchaser, where her children did not undertake to convey anything more than their own interest.

5. **DOWER—ESTATE OF SURVIVING WIFE UNDER TEXAS STATUTE—MINERAL RIGHTS.**

    The land and marital laws of Texas are derived largely from the civil law, and the life estate given thereby to a surviving wife in the lands of her deceased husband is broader than the common-law dower; such life estate being one which under the civil law could not have been impeached for waste, and which would have carried with it the right to open and work every kind of mines on the property.

6. **SAME.**

    The statute of Texas governing "descent and distribution," after providing for the distribution of the personal estate of an intestate who leaves a surviving husband or wife and children, further provides (Rev. St. art. 1689) that "the surviving husband or wife shall also be entitled to an estate for life in one-third of the land of the intestate, with remainder to the child or children of the intestate or their descendants." *Held*, that the word "land" is employed in such statute in its most comprehensive sense, and that a surviving husband or wife takes a one-third interest for life in the land itself, as such, including not only the surface, but also all minerals therein, and is entitled to a proportionate share of the income or profit derived from the extraction of such minerals during his or her lifetime, whether operations were commenced prior to the death of the decedent, or subsequently by the remaindermen or owners of the other undivided interests.[2]

---

[1] State laws as rules of decision in federal courts, see notes to Griffin v. Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

[2] Dower in mines, see note to Black v. Mining Co., 3 C. C. A. 316.

113 F.—28

**7. RECEIVERS—GROUNDS FOR APPOINTMENT—IMPOUNDING INTEREST IN OIL PRODUCTION.**

Complainant's husband died intestate, leaving her and two children surviving, and being the owner at the time of his death of an undivided one-sixth interest in certain lands in Texas, in one-third of which, under the laws of the state, complainant took a life estate. No division of the lands affecting complainant's interest was ever made. Subsequently defendants acquired the interests of all of the other tenants in common of the property, including the interest of complainant's children as remainder-men, and drilled numerous oil wells thereon which produced large quantities of oil. *Held*, that complainant was entitled either to one-eighteenth of the net proceeds of the oil produced, or to the income which such share would produce during her lifetime, and that, while she was not entitled to the appointment of a general receiver to take control and management of the property, she was entitled to the appointment of a special receiver to collect and hold such share of the proceeds pending the determination of her rights therein; the defendants being numerous, and for the most part corporations formed for the sole purpose of producing and selling oil.

Appeal from the Circuit Court of the United States for the Eastern District of Texas.

The opinion of the circuit court, filed December 6, 1901, is in full as follows:

BRYANT, District Judge. This is an application for the appointment of a receiver. The complainant, Annie E. Snow, a citizen of the state of California, joined pro forma by her husband, G. H. Snow, has filed a bill in equity against the defendants, Higgins Oil & Fuel Company and over 200 others, corporations and natural persons, citizens of the state of Texas, or of states other than California, alleging that she is the owner of a life estate in one-eighteenth, undivided, of the John A. Veatch survey of land in Jefferson county, Tex., less certain subdivisions that are excepted, embracing the greater portion of the Beaumont oil field, and including at the date of the filing of the bill 66 flowing wells, all in the possession of the defendants, who are engaged in marketing the oil. She seeks an accounting in regard to the oil taken and marketed, claiming an eighteenth thereof, and to recover the amount ascertained to be due. The bill also contains the prayer for the appointment of a receiver to take charge of the wells, so that they may be operated pending the litigation without risk or detriment to any party, or, in the alternative, that a receiver be appointed to collect one-eighteenth of the revenues from said wells, and to hold or invest the same pending the litigation, with such powers and duties as the exigencies of the case may warrant. Those of the defendants who have appeared in response to the rule to show cause why a receiver should not be appointed have filed demurrers and answers, and make substantially the following contentions: (1) That the complainant has been guilty of laches in not sooner asserting her claim, and should, therefore, be denied equitable relief; (2) that as to 500 acres of the land she is concluded by a judgment rendered in 1887 in a suit brought by her children and others, in which the 500 acres was awarded to one Charles L. Cleveland, a defendant in the suit; (3) that she received and used money from the estate of her first husband, Andrew A.

Veatch, through whom she inherited the life estate here involved, equivalent to her interest in this land, and also received and used a portion of the proceeds of a sale made by her children of their interest, and is therefore estopped from asserting any claim here; (4) that as a life tenant the complainant is entitled to no interest in the oil produced, her estate being limited to the surface; and (5) that in no event should a receiver be appointed. The complainant filed a general replication.

It was established on the hearing that the land in question, about 3,400 acres, was granted by the Mexican government to John A. Veatch, February 6, 1835, and was owned by him at his death, April 24, 1870. He died intestate, and this land was inherited by his six children, one of whom was Andrew A. Veatch. The complainant was married to said Andrew A., January 20, 1869, and lived with him as his wife until his death, intestate, March 11, 1871, when, under the law of descent and distribution in force in Texas, an estate for life in one-third of his one-sixth interest vested in her, with remainder to their children, who were two in number. Afterwards on March 25, 1875, the complainant was married to her present husband, G. H. Snow, and they have ever since lived together as husband and wife. Prior to the year 1882 this land, which is practically all level prairie, lay out, wild and unoccupied. It was about that time inclosed in a pasture with other land by parties who paid the taxes for the use of the land until about the year 1896, when the fences were taken down and it became again uninclosed, with the exception of a few small tracts, of a few acres each, that were put into cultivation subsequent to 1896. Thus it was, nearly all lying out and unfenced, and used as commons by the public, when petroleum oil was discovered in January of the present year. The first well was on the Pelham Humphreys survey, a short distance from the line of the Veatch. Since then many wells have been sunk on the Veatch, and others are being drilled; but the present oil territory thereon does not exceed 200 acres. That portion, however, is thick with derricks, and has upon it tanks, pipe lines, and railroad tracks, and the surface soil is impregnated with petroleum, so that agriculture, or any use, except for the production of oil, is prevented. The greater portion of the remainder of the survey is shown to be capable of cultivation and adapted to rice culture or pasturage. Affidavits were read showing that for these purposes it has a value of from $15 to $35 per acre; but it is under a lease for oil mining. The wells have been drilled, and the tanks and pipe lines constructed, by the defendants, at great expense, as shown by their answers. With the exception of the complainant's interest, they own the land held by them, respectively, deriving title by mesne conveyances from the heirs of John A. Veatch for all except the 500 acres known as the "Charles L. Cleveland Tract," and they hold that under like conveyances from Cleveland. The latter acquired title to this as against all the children and grandchildren of John A. Veatch by a compromise judgment of the district court of Jefferson county, rendered June 7, 1887, in a suit brought by them. The complainant's two children were parties plaintiff, represented by their uncle, Samuel H. Veatch, as next friend;

but she was not a party. Afterwards these children executed powers of attorney to their uncle, and he conveyed their interests thereunder, accounting to them for $300 as proceeds of the sale. This was in 1891, and it seems that they gave their mother a part of the money, and it was used in support of the family. After the Cleveland judgment some of the land was platted as a town, with lots, blocks, streets, and alleys, and some lots were sold; but no evidence was offered showing that the complainant knew of this,—that is, had actual knowledge. It also appears that she never exercised any acts of ownership over the land, or asserted any claim to it, until after the oil discovery. On May 25, 1901, however, she made a written demand on each of the defendants, the Higgins Oil & Fuel Company, the J. M. Guffey Petroleum Company, the Heywood Oil Company, the Lone Star & Crescent Oil Company, and the National Oil & Pipe Line Company, to be let into joint possession, and for an accounting as to the oil taken by them, which was refused. Of these defendants only one, the J. M. Guffey Petroleum Company, states in its answer the amount or value of oil marketed. All the defendants who have answered and are operating wells show their solvency and ability to respond to any judgment that may be obtained against them in the case. In fact, the complainant does not deny their present solvency, but makes a sworn averment as follows:

"Your orator further shows that the property of said corporate defendants operating and that will operate wells on said land consists mainly, and in some instances solely, of the interest owned by them in said land and in said wells; that the land is of but little value, except for the oil, and if said defendants are allowed to exhaust said oil, and pay the revenue to their stockholders, many of whom reside and have their property beyond the limits of the state of Texas, as your orator fears they will do, there would be no available and adequate fund and property out of which your orator could be compensated; that said defendants operating said wells are antagonistic and hostile to your orator, and therefore cannot be relied upon to render an impartial and just account of their operations; also that the oil is taken from the wells by means exclusively within the control of the defendants, and that the complainant has no way of ascertaining and proving by disinterested testimony the amount of oil taken and marketed from time to time."

The first question presented has been frequently decided by the supreme court of Texas, where it is held that, if the complainant's title is a legal one, as in the present case, capable of being established at law, the doctrine of laches and stale claim does not apply. It is simply a question of adverse possession. San Patricio Corp. v. Mathis, 58 Tex. 242; Moss v. Berry, 53 Tex. 632; Williams v. Conger, 49 Tex. 602; House v. Brent, 69 Tex. 30, 7 S. W. 65; Lumber Co. v. Pinckard (Tex. Civ. App.) 23 S. W. 723; Land Co. v. Hyland (Tex. Civ. App.) 28 S. W. 206. And, though sitting in equity, this court may follow the rule of decision in the state court on the question of limitation and laches. Balkam v. Iron Co., 154 U. S. 177, 14 Sup. Ct. 1010, 38 L. Ed. 953; Tioga R. Co. v. Blossburg & C. R. Co., 20 Wall. 137, 22 L. Ed. 331. Again, since the complainant could go into a court of law and establish her title, and then come to this court for the desired equitable relief, there is no reason why she should be denied it in the first instance. In cases, thus, of

concurrent jurisdiction, equity follows the law, and a court of equity will consider itself bound by the same rules that would apply in a court of law. Godden v. Kimmell, 99 U. S. 201, 25 L. Ed. 431; Metropolitan Nat. Bank v. St. Louis Dispatch Co., 149 U. S. 448, 13 Sup. Ct. 944, 37 L. Ed. 799; Reugan v. Sabin, 3 C. C. A. 578, 53 Fed. 420; 11 Am. & Eng. Enc. Law, 476.

The contention that the complainant was bound by the judgment rendered in the suit against Cleveland, when she was not a party to it, cannot be sustained. The fact that her co-tenants might have recovered for her in their names does not alter the matter. Stovall v. Carmichael, 52 Tex. 383; Walker v. Read, 59 Tex. 187; Bass v. Sevier, 58 Tex. 567; Jeffus v. Allen, 56 Tex. 195; 1 Black, Judgm. 554. Nor can it be said that she was a party by representation. Williamson v. Jones (W. Va.) 19 S. E. 444, 25 L. R. A. 222; 15 Enc. Pl. & Prac. 627.

Coming to the next point, the proof offered on the hearing fails of showing that the complainant received from the estate of Andrew A. Veatch in California any more than she was entitled to as her part thereof, so that it becomes unnecessary to say what would have been the effect if she had appropriated more than her share. But it is urged that she estopped herself from asserting her life estate when she accepted as a gift, and used a part of the money realized by her children from the sale of their interests. There is no element of estoppel in it. They had not attempted to sell her interest, or the land itself; but if they had, and she had used the money, she would not have been estopped, because she was a married woman. Johnson v. Bryan, 62 Tex. 623; Owens v. Land Co. (Tex. Civ. App.) 32 S. W. 189, 1057.

A difficult question arises in regard to the rights of a life tenant, as respects petroleum oil obtained from the land. There seems to be no decision in Texas on the point, and but very few by the federal courts; in fact, none directly in point. The statute under which the complainant acquired her life estate appears under the head, "Descent and Distribution," and reads as follows:

"When any person having title to any estate of inheritance, real, personal or mixed, shall die intestate as to such estate, and shall leave a surviving husband or wife, the estate of such intestate shall descend and pass as follows: (1) If the deceased have a child or children or their descendants, the surviving husband or wife shall take one-third of the personal estate, and the balance of such personal estate shall go to the child or children of the deceased and their descendants. The surviving husband or wife shall also be entitled to an estate for life in one-third of the land of the intestate, with remainder to the child or children of the intestate and their descendants." Rev. St. Tex. art. 1689.

It is noticeable that all property is classified, and its mode of descent regulated under two heads: First, "personal property," and, second, "land." The latter term is therefore employed in its most comprehensive sense, and is nomen generalissimum. A life estate is given the survivor in one-third of the land of a deceased husband or wife, in this sense necessarily, because all property of inheritance that is not land is classified as personal property, and if the mineral rights that belonged to Andrew A. Veatch by virtue of his fee simple

ownership of one-sixth of this land did not pass, one-third to his widow for life, as land, it passed as personal property, one-third to her absolutely. The life estate is given, not in the surface of the land, but in the land as land, and it is elementary that the land itself in legal contemplation extends from the sky to the depths. Coke says:

"The term 'land' includes, not only the ground or soil, but everything which is attached to the earth, whether by the course of nature, as trees, herbage, and water, or by the hand of man, as houses and other buildings; and it has an indefinite extent upwards as well as downwards, so as to include everything terrestrial under or over it." Co. Litt. 4a.

Blackstone says:

"Land comprehends all things of a permanent and substantial nature, being a word of very extensive signification; also, if a man grants all his lands, he grants all his mines of metals and his fossils, his woods, his waters, and his houses, as well as his fields and meadows." 2 Bl. Comm. 16–18.

Washburn says:

"Land is always regarded as real property, and ordinarily whatever is erected or growing upon it, as well as whatever is contained within it or beneath its surface, such as minerals and the like, upon the principle that 'cujus est solum, ejus est usque ad cælam' in one direction, and 'usque ad orcum' in the other." 1 Washb. Real Prop. 3.

The American and English Encyclopedia of Law (old edition) defines it as follows:

"Land is the surface of the earth, whatever is attached to it by nature or by the hand of man, and all that is contained within or below it." Vol. 19, p. 1032.

In Koen v. Bartlett, 23 S. E. 665, 31 L. R. A. 130, 56 Am. St. Rep. 887, the court discussed this question of whether a life estate in land is a mere interest in the surface, and said:

"It must be conceded that the life tenant is vested with the ownership thereof as land, as being seised of the immediate freehold of possession, which possession extends from top to bottom, to the subsurface as much as the surface, in other words, to the land as a whole, or the tenant for life has a freehold, as well as a tenant in fee, and that the owners of the inheritance have no more right to approach by a tunnel, and break and enter his superficial close, than they have to break and enter his close on the surface."

Lenfers v. Henke (Ill.) 24 Am. Rep. 263, is to the same effect, and in that case the court said:

"Land comprehends all things of a substantial nature, which includes all ground, soil, or earth whatever, and hath in its legal signification an indefinite extent upwards as well as downwards. Minerals are a part of the land itself, and, if not susceptible of division, the wife is entitled to be endowed of the profits and rents."

According to all the cases and text-books a life estate in land invariably extends to all minerals beneath the surface; but, the right being merely to use and enjoy, and not to dispose of, the land, the difficulty arises in determining what is proper use and enjoyment, and when a life tenant may and when he may not sever and dispose of minerals without being guilty of waste. It is obvious that a life tenant, if allowed to mine, might get a much larger proportion of the benefit of the estate than he would ordinarily receive. On the other

hand, if not allowed to mine, he might get much less. The courts have undertaken to draw the line, and it may be stated as a general rule, at common law, that, while a life tenant may continue to work mines that were open when the tenancy commenced, and this even to exhaustion, and may construct new approaches, he cannot open new mines, for to do so would be to commit waste. The rule allowing life tenants to mine, when the operations are commenced before the tenancy is created, is based on the theory that in such cases mining is a mere mode of use and enjoyment, and to extract minerals is but to take the accruing profits of the land. Raynolds v. Hanna (C. C.) 55 Fed. 801; Koen v. Bartlett, 23 S. E. 664, 31 L. R. A. 130, 56 Am. St. Rep. 884; Seager v. McCabe, 52 N. W. 299, 16 L. R. A. 247; Wentz's Appeal, 106 Pa. 301. The matter resolves itself, then, into a question of when and under what circumstances mining may be adopted as a mode of using the land. The authorities all agree that there is no restriction when the land has once been used for mining purposes before the life tenant comes in; and they now go a step further, and hold that mining will be allowed if the owner of the preceding estate has fixed on it the character of mining land by lease or the like, though no mines were opened. Priddy v. Griffith (Ill.) 37 N. E. 999, 41 Am. St. Rep. 397; Koen v. Bartlett, supra; Seager v. McCabe, supra.

In the case at bar, the remainder-men, being also the owners of seventeen eighteenths absolutely, have taken possession of the entire property to the exclusion of the life tenant, and have converted it into an oil field. The latter has committed no waste, and the point to be decided is, not whether she might drill for oil herself, but whether she may elect to acquiesce in the changing in the mode of use. The estates were joint when the change was made, and no partition was demanded. Consequently, any advantage that ensues must inure to the benefit of all the co-tenants in proportion to their interests. Lenfers v. Henke, 73 Ill. 405, 24 Am. Rep. 263, is an applicable authority, in principle at least. The case involved two questions: (1) Whether a widow is entitled to dower in mines not open when her right of dower attached, but opened by the reversioner before assignment; and (2) whether a certain verbal agreement was valid as an assignment of dower. Both were decided in the affirmative. After announcing that the first question presented was one of first impression, the court proceeds with a review of the authorities. Speaking of the rule that a life tenant or dowress may not open new mines, the court observes:

"In many of the later cases, as well as the earlier cases, no reason whatever is assigned for the adoption of the rule; but, where any is assigned, it is, the dowress cannot open new mines when discovered, because she would be committing waste, which she is not permitted to do. On principle, why may she not be endowed of mines opened by the heir or owner of the fee, after the dower attaches and before there has been any assignment? By all the decisions, it is not waste for her to work mines opened, although the same had been abandoned before the death of the husband. She may construct new approaches, and not be guilty of waste. The reason for the rule adopted that bars dower in all mines not opened during the lifetime of the husband failing, the rule ought not to be extended to cases not strictly within its meaning."

And finally:

"The heir, by opening the mines, has destroyed all other profits of the land. There is no mode of enjoying mines, excepting by working them. If this cannot be done, they are profitless to the dowress. As we have seen, it is not waste in her to work mines opened by her husband, and, by a parity of reasoning, we reach the conclusion it is not waste for her to work mines opened by the heirs before assignment of dower."

Priddy v. Griffith (Ill.) 37 N. E. 999, 41 Am. St. Rep. 397 was decided by the same court, and language to the same effect used.

There is a slight difference between the facts of Lenfers v. Henke and the case at bar. In that case the widow's interest was consummate dower, while here it is a vested life estate in an undivided interest. But it is not perceived how this could affect the principle involved. The reasoning of that case is applicable here, and seems unanswerable, and it is certainly in keeping with the tendency of modern decisions. Still, it recognizes the rule that a life tenant may not open new mines, and it is not in conflict with any of the cases cited by counsel for defendants, unless it be Coates v. Cheever, 1 Cow. 460. It seems to have been there held by one of the courts of New York in 1823 that the widow was not dowable of mines opened by the heir after the husband's death. The land there had been devoted to mining purposes, however, by the husband, in his lifetime, and the decision for that reason was clearly wrong. Billings v. Taylor (Mass.) 20 Am. Dec. 533; Gaines v. Mining Co., 33 N. J. Eq. 603; Priddy v. Griffith, supra; Koen v. Bartlett, supra.

There is another well-established principle that supports the holding of Lenfers v. Henke, and it is this: As against the heir and his vendees, the widow is entitled to dower in her deceased husband's land according to value and condition at the time dower is assigned. A full discussion of this occurs in Allen v. McCoy, 8 Ham. 418. See, also, 1 Washburn, 238–240; 2 Scribner, 595; 5 Am. & Eng. Enc. Law (old) 929. The same rule applies in partition between cotenants, except that actual improvements are allowed to the one making them, but enhancements from independent causes, such as growth in the population of a town or discovery of mineral deposits, may be shared by all.

Thus far the question has been treated without distinction between conventional life estates and common-law dower on the one hand, and life estates inherited by the law of heirship and succession on the other. In Seager v. McCabe, supra, the supreme court of Michigan, construing a dower statute of that state, reviewed the decisions at considerable length, made the distinction, and announced the following conclusion:

"The rules applicable to a country where landed estates are large and diversified, where the laws of inheritance are exclusive, where the theory of dower is subsistence merely, and where there is a strong disposition to free estates from even that charge, do not obtain in a commonwealth like ours, where estates are small, and the policy of our laws is to distribute them with each generation, where dower is one of the positive institutions of the state, founded in policy, and the provision of the widow is a part of the law of distribution, and the aim of the statute is, not subsistence only, but provision commensurate with the estate. In the present case the grant is by·

operation of the statute, giving the use of all the lands of which the husband was seised. The grant must be held to include the use of these lands, irrespective of whether mines are opened upon them before or after the husband's death."

The statute there construed was not as broad as the one of Texas, and was directed at the subject of dower. The Texas statute makes no mention of dower, but defines that which under the civil law would have been a usufruct,—an estate not impeachable for waste. This is specially significant, when it is remembered that the Texas system of land titles and laws of marital rights is devised largely from the civil law. Carroll v. Carroll, 20 Tex. 743. Under the civil law the usufructuary had a right to seek for and open every kind of mines, stone and lime quarries, chalk pits, and gravel banks. 1 Dom. Civ. Law, 843; 2 Dom. Civ. Law, 945-968; Neel v. Neel, 19 Pa. 323.

Another noticeable feature of the statute is that it gives the surviving husband the same estate in the land of the wife upon her death that it gives her in his land at his demise. This is a complete answer to the argument that the rule shall depend upon whether mines are open or not at the time of the husband's death, because he, by reason of his position as the head of the family, is deemed to fix for the use of his property commensurate with the necessities of his family. I think the complainant is entitled to one-eighteenth of the oil produced, after deducting all expenses of producing and marketing. If she is not entitled to the net one-eighteenth absolutely, then she is entitled to have such net yield impounded and put at interest, the interest to be paid to her during her life, while the corpus of the fund is preserved for the remainder-men. Blakley v. Marshall (Pa.) 34 Atl. 564; Wilson v. Hughes (W. Va.) 28 S. E. 781, 39 L. R. A. 292; Bryan, Petroleum, 41; Macswinney, Mines, 65. In neither event, however, should a court of equity take from the defendants the control and management of the common property. But a special receiver, more in the nature of an auditor, will be appointed for the purpose of taking and keeping accurate accounts of all oil marketed by the defendants, together with prices obtained and expenses incurred, and to collect, receive, and hold, subject to the orders of the court, one-eighteenth of the net amount of all oil so marketed. Ullman v. Clark (C. C.) 75 Fed. 868, Williamson v. Jones, 19 S. E. 436, 25 L. R. A. 222.

From the evidence introduced it seems at least probable that the lines of the Veatch and Humphreys surveys coincide, and that the Ingalls and Douthett surveys are invalid. This, however, would still leave the location of the line in dispute. The line fixed by the judgment in the case of Pasture Co. v. Cleveland (Tex. Civ. App.) 26 S. W. 93, appears to have been acted upon as an agreed line for some years, and for the purposes of the present order it will be considered as the true line.

F. C. Proctor, Geo. C. Greer, Foster Rose, Gustave Lemle, D. Edw. Greer, A. T. Watts, and Wm. P. Ellison, for appellants.

Amos L. Beaty and R. R. Hazlewood, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PER CURIAM. As, by the record, the appellee, Mrs. Snow, is seised of an estate for life in one undivided one-eighteenth part of the lands described in the decree appealed from, and to that extent is a tenant in common with the owners of the fee, we all agree that she is interested in and entitled to an accounting for all oil developed and produced on and from the said lands to the prejudice of her estate, and to that end a receiver was properly appointed pending the litigation necessary to finally determine the full rights of the appellee. On this appeal no other questions need be passed upon.

The decree of the circuit court is affirmed, with costs.