## THE TEXAS & PACIFIC RAILWAY COMPANY V. THE STATE OF TEXAS ET AL.

No. 6313.   Decided January 30, 1935.
Rehearing overruled, February 27, 1935.
(78 S. W., 2d Series, 580.)

*W. A. Keeling,* of Austin, *T. D. Gresham* and *M. E. Clinton,* both of Dallas, for plaintiff in error.

In the joint resolution of February 9, 1850, the State of

Texas reserved the right itself to authorize the construction of a railroad within the State, "Which may connect with the main track of the railroad to be constructed by the United States, or by its authority," and afterward the Legislature by Act approved February 16, 1852, incorporated the Texas Western Railroad Company, the name of which was changed to the Southern Pacific Railroad Company, and granted to it the right to take and hold in fee public lands not to exceed 200 feet in width upon which to establish and maintain its railroad, which grant the Texas and Pacific Railway Company acquired pursuant to Legislative and Congressional authority and by deed dated March 2, 1872. Stevens v. Galveston, H. & S. A. Ry. Co., 212 S. W., 639 (Com App.); Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co., 106 Texas, 94, at 102, 157 S. W., 737; Kynerd v. Hulen, Recr., 5 Fed. (2d) 160.

The Act of May 2, 1873, making an adjustment with the Texas and Pacific Railway Company of its claim to alternate sections of public land granted to its predecessor companies only subjected it to the police power of the State, and was not a surrender on the part of the railroad company of a right of way in fee derived from the former acts of the Legislature. Stephenson v. Texas & Pac. Ry. Co., 42 Texas, 162; State of Texas v. Texas & Pac. Ry. Co., 100 Texas, 279; 98 S. W., 834; Northern Pacific Ry. Co. v. Townsend, 190 U. S., 267.

Railroad companies in Texas, under Art. 6317, R. S., 1925, have the right to take oil and gas from their rights of way for use in the operation of their railroad, although they may not own the fee to the land. Brightwell v. International & G. N. R. R. Co., 121 Texas, 338, 49 S. W. (2d) 437; Canton v. Canton Cotton Warehouse Co., 84 Miss., 268, 36 So., 266; Haugan v. Milwaukee & St. P. Ry. Co., 35 Ia., 558, 14 Am. Rep., 502.

*James V. Allred,* Attorney General, *R. W. Yarborough* and *Geo. T. Wilson,* Assistants Attorney General, for defendant in error.

Article 4167, R. S., 1879, does not give a railroad the right to take oil and gas from a strata far below the surface and not upon said land simply because it may profit to the company to produce oil to exchange for fuel instead of purchasing its fuel. Texas Company v. Daugherty, 107 Texas, 226, 176 S. W., 717; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Texas, 160, 254 S. W., 290; Theisen v. Robison, 117 Texas, 489, 8 S. W. (2d) 646.

MR. PRESIDING JUDGE HARVEY delivered the opinion of Commission of Appeals, Section A.

In this case, the plaintiff in error, The Texas and Pacific Railway Company, claims title, in fee, to its right of way through Ector County. The trial court gave judgment for the State, and the Court of Civil Appeals affirmed that judgment. 52 S. W. (2d) 957.

In the year 1850, and for some twenty odd years afterward, the western part of the State, for a distance of some five hundred miles was wild land belonging to the State. The land in this region was unappropriated, unsurveyed, and uninhabiated. In the year 1850, the matter of a transcontinental railroad constituted a subject for animated discussion in the halls of Congress and by the public generally throughout the United States. A number of routes for the road were under discussion. One of the routes was commonly referred to as the "Southern Route" which, in its course westward, would cross Texas. On February 9, 1850, the Legislature of Texas adopted the following Joint Resolution:

"Joint Resolution authorizing the government of the United States to construct a National Railroad through the limits of the State of Texas, to the Pacific Ocean:

"Section 1. Be it resolved by the Legislature of the State of Texas: That the State of Texas hereby grants and guarantees to the United States the right of way through this State for a National Railroad, to be located and constructed under the authority of an Act of Congress, from the Gulf of Mexico or Mississippi River, to the Pacific Ocean, and hereby authorizes the officers, agents and contractors, acting under an Act of Congress for that purpose, to locate, construct, use and control the said railroad; and such railroad may commence at such point in this State on the coast of the Gulf of Mexico, or may enter this State at such point on the eastern or northeastern boundary line of the State, and leave the same at such point on its western boundary as may be determined on by or under an Act of Congress. * * *

"Sec. 2. Be it further resolved, that the State of Texas agrees to extend to the United States all reasonable and proper facilities and co-operation in the construction of said road, and hereby declares that all public lands within one hundred yards of the center of the road shall belong to and vest in the United States; and all locations, surveys and patents, made on the same, after the road has been definitely laid out, shall be void.

"Sec. 3. Be it further resolved, That should the line of said road commence at any point in this State on the coast of the Gulf of Mexico, or enter this State at any point on the eastern or northeastern boundary south of the thirty-fourth degree of latitude, and leave this State on its western boundary at the town of El Paso on the Rio Grande, or at some point on the said river not farther north than one hundred miles distant from the said town, the State of Texas, in addition to the right of way and the grant of lands heretofore guaranteed and declared, doth hereby agree, that all public lands lying within ten miles from the line of one hundred yards from the center of the railroad above granted, shall be divided into sections of six hundred and forty acres each, or some less size when from the nature of the ground such may be more convenient; and that every alternate section shall belong unto and vest in the United States, the said alternate sections to be appropriated to the construction of and for the use and benefit of said road; and the said alternate sections which may under the provisions of this act be allotted to the State of Texas, and all the proceeds arising from the sale thereof shall be, and the same are hereby set apart, reserved and appropriated exclusively for the payment of the public debt of the late Republic of Texas; and all locations made upon the lands herein reserved (after the route of said road has been designated), by virtue of any headright certificate, bounty warrant or land scrip, shall be, and are hereby declared null and void; provided, the expense of laying off the sections and alternate sections, shall be incurred by the United States; and provided further, that if the Government of the United States shall not have adopted this route for the construction of the road by the fourth day of March, 1851, then, and in that case, this resolution shall cease, and have no force or effect.

"Sec. 4. Be it further resolved, That each alternate section is hereby reserved to the State, and shall not be subject to location; but shall be held and reserved to the use of the State, and subject to further disposition by the Legislature.

"Sec. 5. Be it further resolved, That in granting the provisions in this act, they are granted upon the express condition that the State of Texas reserves the right to construct or authorize to be constructed, any other railroad within her limits which she may deem proper, which may connect with the main track of the railroad to be constructed by the United States, or by its authority.

"Sec. 6. That the Governor of this State is hereby re-

quested to furnish our Senators and Representatives in the United States Congress with a copy of these resolutions."

The Federal Government took no action in respect of the foregoing resolution, or of a transcontinental railroad through Texas, prior to March 4, 1851. By Act of Congress, approved March 3, 1871, the Texas Pacific Railroad Company was incorporated, and given authority to construct and operate a railroad to the Pacific Ocean. In said Act it was provided:

"That the right of way through the public lands be and same is hereby granted to the said company for the construction of said railroad and telegraph line. * * * Said right of way is granted to said company to the extent of two hundred feet in width on each side of said railroad where it may pass over public lands. * * *"

A little more than a year later, Congress passed an Act changing the name of said corporation to "Texas and Pacific Railway Company."

■ The company contends that by Section 2 of the Joint Resolution of Feb. 9, 1850, a present conveyance of a right of way, in fee, across public lands in Texas, was effected. In this respect, the company contends that the last proviso contained in Section 3, which reads: "and, provided further, that if the United States shall not have adopted this route for the construction of the road by the 4th of March, 1851, then, and in that event, and in that case, this resolution shall cease, and have no force or effect," modifies Section 3 alone, and therefore did not affect the operation of Section 2, as a present conveyance, in fee, of land to be subsequently identified. The contention is based mainly on the fact that each of the sections of said Joint Resolution, including Section 3, begins with the words: "Be it further resolved," and on the further fact in Section 6 the term "these resolutions" is used. It thus appears, so the company contends, that Section 3 was regarded by the Legislature as a distinct resolution, having no immediate connection with Section 2, and therefore the term, "this resolution," as used in the proviso, has no reference to Section 2. We do not so interpret the legislative intent. It is plain from the caption, and the nature of the general subject with which the joint resolution deals, that the Legislature regarded the joint resolution as a composite whole, and that the term "this resolution" as used in the proviso in question means such composite whole.

■ In this connection it does not appear that, previous to the

passage of this joint resolution, there had been any negotiations between the Federal Government, or any of its departments, and the State of Texas, regarding the construction of a railroad through Texas. The joint resolution appears to have been the voluntary act of the Texas Legislature, unsought by the Federal Government. Manifestly the joint resolution is, in its nature, but a proposal by the State to grant the rights therein specified, on the condition precedent that the route through Texas, for a transcontinental railroad, be adopted by the United States by March 4, 1851. Counsel contends that since the matter of adoption of said route would require such a vast amount of preliminary investigation and work—involving surveys, explorations, reports, etc.—the condition was impossible of performance within the allotted time, and therefore was unreasonable. Perhaps so; but the Legislature had the right to impose such a condition, unreasonable though it was. There can be no doubt that the condition was meant to be imposed, and same not having been met, the joint resolution never became effective, in any respect, as a grant or conveyance.

The plaintiff in error also claims title, in fee, to the right of way in question, under the Act of the Legislature, passed on February 16, 1852, incorporating the Texas Western Railway Company (3 Gammel's Laws, p. 1245). By Section 2 of that Act the corporation was granted the right to construct and operate a line of railroad from the eastern boundary of the State to the western boundary at El Paso,—the railroad to run on "such a course as said company shall decree and determine to be most suitable." By Section 20 of said Act it was provided:

"Section 20. The said company shall have the right to take and hold so much of the public land, not exceeding two hundred feet wide, as the said railway or any of its branches may pass through, for the track thereof, and such additional width as shall be absolutely necessary for any depot or other work for the purpose of said railroad that the company may deem proper to establish. * * *"

In 1856, the name of the last mentioned corporation was changed to "Southern Pacific Railroad Company." (4 Gammel's Laws, p. 622.) The plaintiff in error, in the year 1872, acquired all the property rights of the Southern Pacific Railroad Company, as will be explained further on, and is now, in this suit, claiming title in fee, to the right of way through Ector County under the provisions of Section 20 just quoted. Even though said provisions were interpreted as investing a

fee estate in the right of way land, of the width of two hundred feet, the plaintiff in error still could not maintain its claim to such fee estate, for the reason that the company has been divested of all title and rights to land that the Southern Pacific Railroad Company acquired from the State. The reasons for our saying this are as follows:

The plaintiff in error, in the year 1872, under sanction of Congress and of the Texas Legislature, took over and acquired, by means of consolidation, all the property rights belonging to the Southern Pacific Railroad Company. At that time the last mentioned company had completed a line of railroad from the eastern boundary of the State to Longview, and had surveyed and properly designated as provided by law, the line from Longview as far westward as Abilene, upon which its proposed railroad was to be constructed. After said consolidation occurred, the Legislature, in May, 1873, passed an Act (7 Gammel's Laws, p. 1018) which reads partly as follows:

"An Act to adjust and define the rights of the Texas and Pacific Railway Company within the State of Texas, in order to encourage the speedy construction of a railway through the State to the Pacific Ocean.

"Whereas, By the terms and conditions of an act entitled 'An act to encourage the speedy construction of a railroad through Texas to the Pacific Ocean,' passed May 24th, 1871, and an act supplementary and amendatory thereto, passed November 25th, 1871, authority was given to the Southern Trans-Continental Railway Company, and to the Southern Pacific Railroad Company, incorporations created by acts of the Legislature of the State of Texas, to become consolidated with the 'Texas Pacific Railroad Company,' an incorporation created by an act of the Congress of the United States; and

"Whereas, it appears from documentary evidence on file in the office of the Secretary of State of the State of Texas, that such consolidation has been effected; and as a difference of opinion may arise as to the construction of the acts of the Legislature hereinbefore referred to, in regard to the amount of lands to which said Texas and Pacific Railway Company may be entitled under the said acts of incorporation, and other laws of this State; and

"Whereas, it is desirable that there should be a complete and final adjustment of the rights of said Texas and Pacific Railway Company, as the assignee and successor of the said Southern Pacific Railroad Company, and the said Southern Trans-Continental Railway Company, under the laws of this

State, and a definite understanding as to the obligations of the State, and to the further end that said company be encouraged to the speedy construction of said railway, therefore,

"Section 1. Be it enacted by the Legislature of the State of Texas, That the 'Texas and Pacific Railway Company,' a corporation created by an act of the Congress of the United States. * * * And the said Texas and Pacific Railway Company, as the successor of the 'Southern Pacific Railroad Company,' a corporation created by the laws of the State of Texas, shall construct its road from its present western terminus at Longview, in Upshur county, as now located through the town of Dallas, to the point of junction at Fort Worth by the first day of July, 1874; and said Texas and Pacific Railway Company shall construct a single track railroad from the said point of junction at Fort Worth westwardly, on the most practicable route, to a point not less than one-fourth nor more than one-half mile from the court house in the town of Weatherford, in Parker County, at which point said company shall establish and maintain a freight and passenger depot; * * * and thence westwardly on the most practicable route to the Rio Grande river at a point in the county of El Paso, opposite the town of El Paso, in Mexico; * * *

"Sec. 2. That the State of Texas hereby grants and donates to the said Texas and Pacific Railway Company twenty sections of land, of six hundred and forty acres each, for every mile of its road completed in good substantial running order in the State of Texas.

"*     *     *     *     *

"Sec. 9. That the above grants, donations, and reservations are made to the said Texas and Pacific Railway Company, a corporation created by an act of the Congress of the United States, approved March 3rd, 1871, as the assignee of and successor to the rights, privileges and franchises of the Southern Trans-Continental and Southern Pacific Railroad companies, corporations created by the laws of Texas, with the intent and distinct understanding that the same shall be accepted by said Texas and Pacific Railway Company, in full satisfaction of any claims for money, bonds, or lands, to which said company might be entitled under the act entitled 'An Act to encourage the speedy construction of a railway through the State of Texas to the Pacific Ocean,' passed May 24th, 1871, and 'An Act amendatory of and supplementary thereto,' passed November 25th, 1871, or by virtue of the consolidation of said Texas

and Pacific Railway Company with the Southern Trans-Continental Railway Company and the Southern Pacific Railroad Company, or by virtue of the charters of either of said railroad companies, or by virtue of any railroad franchise granted by the State of Texas, purchased or acquired by either of said companies or by the Texas and Pacific Railway Company, or by virtue of any general or special law of this State, and in full satisfaction of all claims or demands for bonds, lands or money of the said Southern Pacific and Southern Trans-Continental Railroad Companies against the State of Texas; and said Texas and Pacific Railway Company shall be subject to such general laws as may be enacted by the Legislature, applicable to other railroads constructed within this State. And that all the property of the said corporations, or either of them, now or hereafter situated in this State, shall be hereafter subject to taxation by the laws of this State.

"*    *    *    *    *

"Sec. 11. That said Texas and Pacific Railway Company, by their board of directors, shall, within fifteen days from the date of approval of this act, signify to the Governor, by telegraph or otherwise, the acceptance or rejection of the terms and conditions of this Act, and within thirty days from the date of approval of this act, shall file a formal acceptance or rejection of the same with the Secretary of State of the State of Texas.

"Sec. 12. That all laws and parts of laws, in conflict or inconsistent with the terms and provisions of this act, be and the same are hereby repealed.

"Sec. 13. That this act take effect and be in force from and after its passage."

The plaintiff in error duly accepted the above Act, and the terms and conditions thereof, as prescribed in the Act. The line of railroad from Longview to El Paso was completed in the year 1881, by the plaintiff in error.

■ We have no reason to doubt that the acceptance by the plaintiff in error of the terms and conditions of the Act of May, 1873, set out above, effected a complete divestiture of all rights respecting land, whether right of way land or not, which the Southern Pacific Railroad Company had received from the State, and which the plaintiff in error had acquired. Language more definitely disclosing such a purpose, than does the language contained in Section 9 of said Act, could scarcely be framed. To hold, as we are asked to do, that rights respecting

right of way land are excepted from the all-embracing language contained in said section would require reading into said language words that are not there. After such acceptance by the plaintiff in error, the company had no rights concerning any land which the Southern Pacific Railroad Company acquired from the State, except easement rights in such land as the last named company, prior to the consolidation, was entitled to "take and hold" under the above quoted provisions of Section 20 of the Act of February 16, 1852. In Section 1 of the Act of May, 1873, language occurs which reasonably implies a grant of such easement rights. We refer to the provisions contained in the last mentioned section which provide for the construction, by the plaintiff in error, of the railroad, as far as Fort Worth, on the line previously located—inferentially by the Southern Pacific Railroad Company; thence on westward to El Paso, as provided in said section.

■ This brings us to the contention that, under Article 6317 of the Revised Statutes of 1925, the plaintiff in error has the right to drill for and produce oil and gas from its right of way in question, for its own use in operating its railroad. This statute reads as follows:

"Every such corporation shall have the right of way for its line of road through and over any lands belonging to this State, and to use any earth, timber, stone or other material upon any such land necessary to the construction and operation of its road through or over said land."

It will be observed that this statute provides for the use by the corporation of "earth, timber, stone or other material upon such land." It is settled that the term "other material" means material of the same class as the materials enumerated; and since oil and gas do not belong to that class, it follows that this contention, too, must be overruled. Right of Way Oil Co. v. Gladys City Oil, Etc. Co., 106 Texas, 94, 157 S. W., 737.

The judgment of the trial court and that of the Court of Civil Appeals are affirmed.

Opinion adopted by Supreme Court January 30, 1935.