**ANDERSON & KERR DRILLING CO. et al. v. BRUHLMEYER et al.**

No. 13795.

Court of Civil Appeals of Texas. Fort Worth.

March 18, 1938.

Rehearing Denied April 29, 1938.

Hayes, Richardson, Shartel, Gilliland & Jordan and Catlett & Kerr, all of Oklahoma City, Okl., and Cantey, Hanger & McMahon, Gillis A. Johnson, and Alfred McKnight, all of Fort Worth, for appellants.

John W. Culp, of Gainesville, Fred H. Minor, of Denton, A. A. White, of Tyler, and Wynne & Wynne and Wm. A. Wade, all of Longview, for appellees.

BROWN, Justice.

This is an appeal from an order appointing a receiver to take over the entire management and control of a tract of land in Cooke county, Tex., on which there are a number of producing wells, which are being operated under a lease by the appellants.

The appellees, who prayed for the appointment of the receiver, and all parties interested, are circumstanced as follows: N. J. Johnson and his wife, M. E. Johnson, owned this tract of land on April 28, 1891, and conveyed same to one J. R. Cother. The following reservation is found in this deed: "And the said N. J. Johnson and M. E. Johnson reserves one-half interest in all Minerells Paint Rock &c found or will be found on said tract of land." The appellees, who are heirs of the Johnsons, contend that this reservation entitles them to one-half of the oil and gas in and under the said lands.

The appellants, on August 4, 1936, brought suit in the district court of Cooke county against N. J. and M. E. Johnson and their unknown heirs, and others, in trespass to try title, and judgment for plaintiffs was had on October 29, 1936; the service on the defendants being had by publication.

On August 21, 1937, appellees, who are heirs of the Johnsons, filed their original petition, seeking to set aside said judgment and amended their petition on August 29, 1937. No citations were issued upon the defendants in this action, and the hearing was set for November 5, 1937, in vacation, and appellants were required to answer the application for receivership by telegraphic notices. Upon a hearing, the trial court appointed a receiver, on November 23, 1937, giving such receiver full authority to take over the entire management and control of the property and the producing wells.

We take it that a receiver should not be appointed by a trial court in a case of this character, unless the evidence shows that the applicants have a probable right of recovery, and that they are in danger of sustaining a loss unless a receiver is appointed. Even if the Johnson heirs are able to show an absolute right to one-half of the oil and gas in and under the lands in controversy, by reason of the above-quoted reservation, it appears to us that it is wholly inequitable and unjust to appoint a receiver to dispossess, so to speak, the appellants, and to take over the entire management and control of the property and the producing wells, in the face of the fact that it is undisputed that the appellants have the absolute title to and are entitled to the possession and control of the property, so far as an undivided one-half interest in the oil and gas in and under the same is concerned; unless it could be made to appear that the appellants are in some way mismanaging the property and jeopardizing the interest of these heirs, we do not believe that such a receivership is right.

If, upon the hearing had before the trial court, it appeared to the court that there was a reasonable probability of the Johnson heirs on a final hearing recovering an undivided one-half interest in and to the oil and gas in and under the property, we are of opinion that the trial court should go no further than to appoint a receiver to watch over, protect, and receive the proceeds of an undivided one-half of the oil and gas produced from the property. This would have given the Johnson heirs full and complete protection, and at the same time would not have disturbed the possession and control of the appellants, who are unquestionably entitled to such possession and control, under the lease under which they hold. These appellants have developed the property at great expense to themselves, and their rights in the premises, even if the Johnson heirs may ultimately recover an undivided one-half interest in the oil and gas, are just as sacred, if not more so, than the rights of the Johnson heirs. Therefore, we hold without reservation that the sweeping and broad order appointing a receiver for the properties ought not to have been made, and that same should be and it is hereby nullified and set aside.

We deem it proper, because the matter is raised before us, to discuss the reservation on which the Johnson heirs rely for a recovery. The record discloses that they introduced no evidence upon the trial, but that they rely solely upon the language used in the reservation. We do not believe that any court has the authority to take the language used by the Johnsons in their deed to Cother, on April 28, 1891, and determine or declare that such language is a clear and unmistakable reservation of all minerals of all kinds that may be found on the premises, or of oil and gas. The use of the words, "Minerells Paint Rock &c found or will be found on said tract of land," is meaningless unless the court determines that the word "Minerells" must of necessity be read and understood as "minerals." Taking this view of it, which is the broadest and most liberal view that can be taken, it cannot be said that the words are clear and unambiguous, to the extent that the court may say there is no room for doubt that the Johnsons reserved an undivided one-half interest in all minerals in and under this tract of land.

We are of opinion that the intent and purpose of these grantors must be sought, and the appellants upon the trial established this purpose, in our opinion, by evidence that was not attempted to be contra-

dicted, and which, to us, appears to be rather conclusive. It was shown that at the time this deed was executed there was not only no oil known to exist in any part of Cooke county, Tex., but that in the year 1890 only 54 barrels of petroleum were produced in the whole of the state of Texas, the production being in Nacogdoches county. It was shown that only 54 barrels of petroleum were produced in 1891, and only 45 barrels in 1892, and that it was not until 1897 that an appreciable amount of petroleum was produced in Texas, and all this at far distant places from Cooke county. It was shown that the land in controversy, before the deed was executed by the Johnsons and at the time of its execution, had a considerable deposit of dark red rock, that cropped out on the surface of the land, which was known to the inhabitants of Cooke county as mineral paint rock and paint rock, and that it was used to some extent by grinding same up and making paint out of it. It was shown that there were also some liberal deposits of sandstone on the property in controversy. The evidence discloses that this paint rock was known to many of the people, and that they evidently believed it valuable; that there was some talk of establishing a paint mill to make paint out of such rock.

We are of opinion that the use of the words (reconstructed by us because of the spelling) "minerals paint rock," under the facts and circumstances disclosed by the evidence in this case, evidenced an intention on the part of the grantors to reserve an undivided one-half interest in this paint rock, above mentioned. And we are of opinion that the use of the character "&c" in this deed does not serve to enlarge the reservation in favor of the heirs of the grantors, to the extent that it can be said to cover oil and gas.

In the case of Stansbery v. First Methodist Episcopal Church, 79 Or. 155, 154 P. 887, it was held that the use of the abbreviation "etc.," following the recital of the purpose of the deed, if to be accorded any meaning at all, only signifies, "and other like purposes." If the abbreviation "&c," used in the deed before us, is to be accorded any meaning at all, when following the words "minerals paint rock," we are of opinion that it signifies "and other like rocks," and nothing more.

In volume 14, p. 962, Tex.Jur., we find the following language: "Another rule is that an exception or reservation is to be

construed against the grantor and in favor of the grantee so as to confer on the grantee the greatest estate that the terms of the instrument will permit."

In the case of Arden v. Boone, 187 S.W. 995, 997, affirmed by the Supreme Court in 221 S.W. 265, in construing a deed containing a reservation, this court said: "It is a well-recognized rule of construction of deeds that, where there is doubt as to the meaning or purport of the terms used, the construction most favorable to the grantee should be applied."

In the case of Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co., 106 Tex. 94, 157 S.W. 737, 739, 51 L.R.A.,N.S. 268, Chief Justice Brown said: "The rule of construction, 'ejusdem generis,' is thus stated: 'General words following particular words will not include things of a superior class.' There is this further restriction of general words following particular words, that the general words will not include any of a class superior to that to which the particular words belong." See, also, Texas & P. Ry. Co. v. State et al., 124 Tex. 482, 78 S.W.2d 580, opinion adopted by the Supreme Court.

The Commission of Appeals, in an opinion adopted by the Supreme Court, in Gulf Production Co. et al. v. Spear, 125 Tex. 530, 84 S.W.2d 452, 455, said: "It is also true that, when an instrument does not by its terms clearly and plainly describe the land affected, or is phrased in language susceptible of more than one construction, the intention of the parties is to be ascertained, not solely from the words of the instrument, but from its language when read in the light of the circumstances surrounding the transaction."

Applying this rule to the case at bar, the best that can be said is that because of the ambiguity and uncertainty of the language used by the Johnsons, their intention must be gathered from all of the facts and circumstances that may be adduced upon the trial of the case on its merits.

We believe that the receivership was improvidently granted, under the facts and circumstances disclosed in this record, and the order and judgment of the trial court appointing such receiver is reversed, and judgment here rendered, vacating such order of the trial court. We have pretermitted passing upon the other points raised on the appeal, deeming a discussion of those already had sufficient at this time.

## On Motion for Rehearing.

Appellees contend that they have shown a probable right of recovery of an undivided one-half of the minerals in and under the lands in controversy, and that such interest is in danger of being lost, removed, or materially injured, and that, therefore, they are entitled to the appointment of a receiver to take over the management and control of the entire property and the operation of the oil wells drilled thereon by the lessees of the owner of the surface and, admittedly, the owner of one-half of such minerals.

In the motion for rehearing, complaint is made of this court's opinion, wherein we discuss the provisions of the deed under which appellees claim the interest for which they bring suit. Appellees assert that what we have said is dictum. We propose to show that it is not only not dictum, but that our conclusions are pertinent and even necessary to a determination of the issue presented as to the right to a receiver.

It will not be contended that the right to have a receiver appointed in a court in Texas is not purely statutory. The very statute here invoked by appellees makes it plain that a receiver may be appointed only when the party applying for such shows a probable right to or interest in the property, or fund, or the proceeds thereof, over which the suit is brought, and that such property or fund is in danger of being lost, removed, or materially injured. Article 2293, R.C.S.

We held in the original opinion, and we here reiterate, that appellees did not show such a probable right of recovery as would warrant the character of receivership that was granted and ordered by the trial court.

Let us see if appellees' interests are in such danger of being lost, removed, or materially injured as that a receiver, having complete management and control over the entire property and the production of oil therefrom, should have been appointed.

The record discloses that, after the trial court indicated his intention to appoint a receiver, appellants requested the trial court to limit the powers of the receiver to that of taking over and protecting the proceeds from the portion of the oil claimed by appellees, and to provide for the impounding of such funds in some bank selected by the court, or, in the alternative, that the trial court require a bond conditioned in such manner that it would protect the appellees

with respect to the operation of the properties, and account for the proceeds from sale of oil produced.

This, to us, shows no disposition on the part of appellants to bring about a condition under which appellees' property and funds are in danger of being lost, removed, or materially injured. On the other hand, this, to us, shows a desire upon appellants' part to co-operate with the court in the protection and preservation of all of the property and funds claimed by appellees. Mr. Justice Neill, of the San Antonio Court of Civil Appeals, aptly said, in People's Investment Co. v. Crawford et al., 45 S.W. 738, 740: "The power to appoint a receiver * * * will not be exercised, except upon a very grave necessity, and upon a clear showing that the applicant's rights imperatively demand the apointment, and that without it he has no adequate remedy, and is in danger of suffering irreparable loss." Many authorities are cited.

Chief Justice Conner of this court, in Galvin v. McConnell et al., 53 Tex.Civ.App. 486, 117 S.W. 211, 213, said: "In all cases, as we understand the law, the remedy of a receivership is to be cautiously applied." Mr. Chief Justice Conner has gone to his reward and his successors, without hesitation, reannounce the doctrine found in the opinion written by him almost thirty years ago.

Chief Justice Fly, of the San Antonio Court of Civil Appeals, in Kokernot v. Roos, 189 S.W. 505, 508, said: "A 'receiver' is defined as an indifferent person between the parties to a cause, appointed by the court to receive and preserve the property or fund in litigation pendente lite."

The only property or fund about which these parties are litigating is a one-half interest in the oil and gas in and under the lands in controversy.

We reiterate: If the trial court is of opinion that a receiver should be appointed in this cause, such receiver should be given no authority other than to take charge of the proceeds of one-half of the oil and gas produced from the premises, after deducting such operating expenses as the facts may warrant.

Furthermore, appellees are asking that the doctrine of balancing of equities be wholly disregarded in this suit.

We see no substantial difference in the light of this record between the granting of an injunction restraining appellants from controlling and operating the properties in controversy, and the appointment of a receiver to take over the control and operation of the same, to the exclusion of the undisputed rights of appellants. The result, of which we speak, appears, to all intents and purposes, practically the same.

Who has developed these oil-bearing properties? At whose expense has this been done? The answer is obvious. The appellants. Had they not done so, there would be nothing over which appellees could litigate. The greater equities are with appellants, and their rights should not be ignored.

Can it reasonably be said appellants should be denied the privilege of drilling other wells on the premises? And yet the appointment of a receiver to take complete management and control of the lands denies them such right. Even though the trial court should approve such further development, appellants would have no voice in the matter.

Should the trial court see fit to grant a receiver, having such limited authority as the equities demand, the right of appellants to further develop the property, during the pendency of such receivership, should not be denied but expressly preserved.

If the doctrine here announced by us appears "strange" to any party to this litigation, or to any attorney, our answer is that to us it is equitable and just, and amply supported by pronouncements heretofore made. Alworth v. Morris, Tex.Civ. App., 19 S.W.2d 212, opinion by Chief Justice Hickman; General Oil Co. v. Ferguson, Tex.Civ.App., 224 S.W. 261; West v. Herman, 47 Tex.Civ.App. 131, 104 S.W. 428, 432; Davis v. Hudgins, Tex.Civ.App., 225 S.W. 73; Hardy Oil Co. v. Burnham, 58 Tex.Civ.App. 285, 124 S.W. 221; Higgins Oil & Fuel Co. v. Snow, 5 Cir., 113 F. 433; Duncan v. Thompson, Tex.Civ. App., 25 S.W.2d 634; Turnbow v. Bishop, Tex.Civ.App., 71 S.W.2d 918; 36 Tex.Jur. par. 8, p. 25; same text, par. 28, p. 62, and par. 29, p. 64.

Appellees complain because we said that, in our opinion, the language used in the deed, on which appellees bottom their right to recover one-half of all minerals found on and under the lands in controversy, is ambiguous. The complaint is that we should say more and explain how and why the language is ambiguous.

Webster's Dictionary gives the meaning of "ambiguous" as "uncertain, doubtful of meaning." It does not occur to us that any court, in construing language before it, need go further than declare the language ambiguous. Such expression has a definite and well understood meaning.

In Tom v. Roberson, Tex.Civ.App., 182 S.W. 698, 700, writ refused, the following was said: "An ambiguous contract is one capable of being understood in more senses than one; a contract obscure in meaning, through indefiniteness of expression, or having a double meaning."

The language in the deed before us falls within the definition thus given. We do not know how to make our statement that the language is ambiguous more definite than has been done.

█ In view of what has been said, in connection with the motion for a rehearing, we wish to make plain the fact that every opinion delivered by any member of this court is the unanimous opinion of the court, unless a dissent is entered. And such opinion is not delivered until a full and complete consideration of the record is had by the entire membership of this court, after careful and painstaking consultation.

The motion for rehearing is overruled.