**Paul LINDSEY, Individually and as Guardian of Linda Jill Lindsey, and Gayle Lindsey, Appellants,**

**v.**

**STATE of Texas, Appellee.**

**No. 3-90-169-CV.**

Court of Appeals of Texas, Austin.

June 19, 1991.

Rehearing Overruled July 17, 1991.

Samuel D. McDaniel, Bankston Wright & Greenhill, Austin, for appellants.

Jim Mattox, Atty. Gen., David W. Williams, Asst. Atty. Gen., Austin, for appellee.

Before CARROLL, C.J., and JONES and SMITH, JJ.

JONES, Justice.

Paul and Gayle Lindsey, acting individually and on behalf of their daughter, Linda Jill Lindsey, sued the State of Texas alleging: (1) intentional, grossly negligent, or negligent failure to provide Linda Jill with educational services mandated by the Texas Education Code; and (2) discrimination under 42 U.S.C. § 1983 (1981). Based on federal law, the trial court granted a take-nothing summary judgment as to the section 1983 claim. The court later granted a take-nothing summary judgment, based on governmental immunity, as to the remaining claims. The Lindseys appeal, challenging only the trial court's governmental-immunity ruling. We will affirm.

Born in 1965, Linda Jill Lindsey is deaf and emotionally disturbed. The Texas Education Code provides that "[t]he Texas School for the Deaf shall: (1) provide educational services on a day or residential basis to deaf students for whom adequate educational opportunities are unavailable in their local or regional programs." Tex. Educ.Code Ann. § 11.03(i)(1) (1991). The Education Code also provides:

The Texas School for the Deaf shall provide the services listed in Subdivisions (1) through (3) of Subsection (i) of Section 11.03 of this code to any student who is an eligible handicapped student referred by a state agency or by the governing board of a school district through the agency's or district's admission, review, and dismissal committee and for whom the school is the appropriate placement.

Tex.Educ.Code Ann. § 11.032(a) (1991).

Although medical advice indicated that Linda Jill needed a structured twelve-month school program, and although the Lindseys and their local school district requested such a program for her, the Texas School for the Deaf did not provide it. The Lindseys felt that this failure violated the foregoing sections of the Education Code.

In 1981 the Lindseys obtained from the legislature passage of a resolution permitting them to sue the State for any injuries resulting from the State's actions regarding Linda Jill. *See* Tex.S.Con.Res. 69, 67th Leg., 1981 Tex.Gen.Laws 3911. Although the resolution permitted the Lindseys to sue the State, it contained the following provisions:

RESOLVED, That nothing in this resolution may be construed as an admission by the State of Texas or by any of its employees, agents, departments, agencies, or political subdivisions of liability or of the truth of any allegations asserted by the claimant, but the alleged cause of action must be proved under the laws of this state as in other civil suits; and, be it further

RESOLVED, That nothing in this resolution may be construed as a waiver of any defense of law or fact available to the State of Texas or to any of its employees, agents, departments, agencies, or political subdivisions, but every defense is specifically reserved.

Tex.S.Con.Res. 69, *supra.*

In May 1983 the Lindseys filed the present suit. In February 1990, based on *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the trial court granted partial summary judgment against the Lindseys on their section 1983 claim; the Lindseys do not complain of that ruling in this appeal. Based on governmental immunity, the trial court later granted summary judgment against the Lindseys on their claims for intentional, grossly negligent, or negligent violation of the various provisions of the Education Code.

■ The Lindseys challenge the trial court's governmental-immunity ruling on two grounds: (1) that the senate concurrent resolution waived the State's immunity from liability as well as its immunity from suit; and (2) that the sections of the Education Code quoted above provide a sufficient "legal obligation existing under prior law" to avoid the State's immunity from liability.

The Lindseys first argue that Senate Concurrent Resolution No. 69 waived the State's immunity from liability as well as

its immunity from suit. This proposition has been resolved adversely to the Lindseys on numerous occasions. For example, in *State v. McDonald,* 220 S.W.2d 732 (Tex. Civ.App.1949, writ ref'd), the court rejected the same contention as to a similarly worded resolution. Recognizing the distinction between immunity from suit and immunity from liability, the court held that the paragraph of the resolution reciting that "nothing herein shall be construed as an admission of liability" prevented the conclusion that the resolution was intended to waive the State's immunity from liability. *Id.* at 733; *see also State v. Isbell,* 127 Tex. 399, 94 S.W.2d 423, 424–25 (1936); *State v. Brannan,* 111 S.W.2d 347, 349 (Tex.Civ. App.1937, writ ref'd); *Brooks v. State,* 68 S.W.2d 534 (Tex.Civ.App.1934, writ ref'd). We conclude that Senate Concurrent Resolution No. 69, standing alone, waives only the State's immunity from suit (i.e., gives consent to sue the State), but does not waive the State's immunity from liability.[1]

 The Lindseys also argue that the State's immunity from liability may be overcome by "a legal obligation which exists under prior law." The requirement of "pre-existing law" comes from section 44 of article 3 of the Texas Constitution:

> The Legislature ... shall not ... grant, by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law; ....

Tex. Const.Ann. art. III, § 44. The Lindseys contend that this requirement is met in the present case through the Education Code's imposition of specific obligations on the Texas School for the Deaf. We disagree.

The Lindseys direct our attention to three cases they say exemplify the conditions necessary to satisfy the pre-existing-law requirement: (1) *State v. City Nat'l Bank,* 603 S.W.2d 764 (Tex.1980); (2) *State*

*v. Hale,* 136 Tex. 29, 146 S.W.2d 731 (1941); and (3) *Austin Nat'l Bank v. Sheppard,* 71 S.W.2d 242 (Tex.1934). All are distinguishable from the present case.

In *City National Bank,* the court allowed a money judgment against the State for 13 months' occupancy of the bank's building by a state commission after the primary term of the party's lease had expired. The court's decision was based, however, solely on the fact that the bank's suit was for breach of a written contract, i.e., the lease agreement. 603 S.W.2d at 765–66. The State's entry into a contract waives its immunity from liability with regard to claims made under the contract:

> It is well settled that so long as the state is engaged in making or enforcing laws, or in the discharge of any other governmental function, it is to be regarded as a sovereign, and has prerogatives which do not appertain to the individual citizen; but when it becomes ... a party to a contract with a citizen, the same law applies to it as under like conditions governs the contracts of an individual.

*Fristoe v. Blum,* 92 Tex. 76, 45 S.W. 998, 999 (1898); *see also Dillard v. Austin Indep. School Dist.,* 806 S.W.2d 589, 592–93 (Tex.App.1991, writ requested); *Courtney v. University of Texas Sys.,* 806 S.W.2d 277, 281–82 (Tex.App.1991, writ denied). The present case does not include a contractual claim. *City National Bank* is inapposite.

*Hale* involved a claim for flood damage to the plaintiff's land caused by a nearby public construction project. The supreme court permitted the claim on the theory that the construction "constituted a taking or damaging of their property for public use," compensable under article I, section 17 of the Texas Constitution. 146 S.W.2d at 735–37. There was no discussion of the pre-existing-law requirement found in article III, section 44.

In *Austin National Bank,* a foreign corporation paid a tax under duress. Shortly

---

1. We note that although section 107.002 of the Civil Practice and Remedies Code applies only to legislative resolutions adopted on or after August 31, 1987, and so does not apply to the Lindseys' resolution, subsection (b) of that statute appears to be merely a codification of existing case law: "A resolution granting permission to sue does not waive to any extent immunity from liability." Tex.Civ.Prac. & Rem.Code Ann. § 107.002(b) (Supp.1991).

thereafter, in an unrelated case, the Texas Supreme Court declared the imposition of such a tax to be improper. The bank, as assignee of the corporation's right to the return of its money, sued the State for a refund of the illegally collected funds. The court first explained the meaning of the "pre-existing law" requirement contained in article III, section 44:

> By its express words the constitutional provision under consideration in no uncertain terms prohibits the Legislature from appropriating state money to "any individual" unless such appropriation shall have been provided for by a "pre-existing law." We interpret this to mean that the Legislature cannot appropriate state money to "any individual" unless, at the very time the appropriation is made, there is already in force some valid law constituting the claim the appropriation is made to pay a legal and valid obligation of the state. By legal obligation is meant such an obligation as would form the basis of a judgment against the state in a court of competent jurisdiction in the event it should permit itself to be sued.

71 S.W.2d at 245. The court next held that "a common-law right is a right under a 'pre-existing law' within the meaning of the constitutional provision under discussion here." *Id.* Finally, the court held that the repayment of an illegal tax constituted a "legal obligation" of the State for purposes of article III, section 44 of the constitution. Accordingly, the court held that the claim was not barred by the State's immunity from liability.

While the supreme court's holding in *Austin National Bank* elucidates the meaning of the constitutional provision in question, it does not control the present case. In concluding that the claim was a pre-existing "valid obligation" on the part of the State, the court in *Austin National Bank* emphasized that illegally collected tax money "never becomes the property of the state as against the real owner." 71 S.W.2d at 246. Thus, the court effectively held that tax funds illegally collected by the State are held by the State in trust for the true owner. In the present case, on the

other hand, the Lindseys' claim is not for money held in trust by the State, nor is it even for a liquidated sum. The doctrine enunciated in *Austin National Bank* cannot be extended to include such a claim.

We conclude that the Lindseys' claim is not one "provided for by pre-existing law" within the meaning of article III, section 44 of the Texas Constitution. Although the relevant provisions of the Education Code imposed certain duties on the State, they did not expressly obligate the State to pay the Lindseys' claim for damages.

The judgment of the trial court is affirmed.