

NUMBER 13-10-015-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

RAILROAD COMMISSION OF TEXAS, Appellant,

v.

GULF ENERGY EXPLORATION CORPORATION, Appellee.

On appeal from the 267th District Court
of Calhoun County, Texas.

# MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Benavides and Vela
Memorandum Opinion by Justice Vela

This is an interlocutory appeal from a trial court order denying appellant, the Railroad Commission of Texas's ("the Commission"), plea to the jurisdiction. By four issues, the Commission urges that a joint resolution by the Texas Legislature granting appellee, Gulf Energy Exploration Corporation ("Gulf Energy"), permission to sue the State of Texas, subject to chapter 107 of the Texas Civil Practice and Remedies Code, with respect to the wrongful plugging of State Tract 708-S No. 5 ("708-No. 5") was a limited waiver of sovereign immunity. The Commission also initially argued, by its third issue, that Gulf Energy's claims were barred because it lacked standing, but withdrew its standing argument in its reply brief.[1] We affirm, in part, and reverse and remand, in part.

## I. BACKGROUND

Gulf Energy filed suit against the Commission, Superior Energy Services, L.L.C., and Fugro Chance, Inc., for plugging and abandoning well 708-No. 5 after agreeing it would not do so. Gulf Energy urged causes of action for breach of contract, fraud, negligent misrepresentation, negligence, and gross negligence.

Gulf Energy is in the business of acquiring leases for the purpose of oil and gas production. In February 2007, it acquired the 708-No. 5. American Coastal Energy Corporation ("ACE") was the operator. As operator, ACE had the responsibility to pay the cost of plugging and abandoning the well when it stopped producing. By 2008, the Commission declared the 708-No. 5 well, in addition to others, to be "orphan wells" that

---

[1]Gulf Energy pleaded that the lease went into effect in February 2007. The Commission states that as "long as [the Commission] maintains that the lease was entered into in February 2007, Gulf Energy satisfies the standing requirement for bringing injury-to-property claims. Accordingly, the Commission withdraws its argument that Gulf Energy lacks standing based on these pleadings."

needed to be plugged and abandoned. ACE was unable to pay the cost of plugging the well and filed for bankruptcy. Gulf Energy agreed to provide a cash deposit of $400,000 to satisfy the eventual cost of plugging and abandoning the 708-No. 5, as well as other wells on the lease. Gulf Energy was also successful in rescinding the plugging order and it took over production. State Tract 707-S #5 ("707-No. 5"), located on the tract adjacent to the tract on which the 708-No. 5 was located, was still scheduled to be plugged and abandoned. However, Superior, through its subcontractor, Fugro, plugged the 708-No. 5, rather than the 707-No. 5. At the time the 708-No. 5 was plugged, Gulf Energy pleaded that there were personnel from Superior, Fugro and the Commission on board the vessel that traveled to the 708 No.-5., rather than the 707-No. 5. The Commission admitted that the plugging and abandoning of tract 708-No. 5 was wrongful. Gulf Energy sought a legislative waiver of the Commission's sovereign immunity from suit, which was granted. *See* TEX. S. CON. RES. 72, 81st Leg., R.S. (2009) ("Joint Resolution 72").

Thereafter, Gulf Energy filed suit against the Commission, Superior Energy Services, and Fugro. The Commission filed a plea to the jurisdiction on the ground that Joint Resolution 72 waived the Commission's immunity for some, but not all of Gulf Energy's claims. Specifically, the Commission claims a "waiver of immunity only with respect to Gulf's breach of contract claim, and does not clearly and unambiguously waive immunity with respect to Gulf's tort claims." The trial court denied the plea, and this interlocutory appeal ensued.

## II. STANDARD OF REVIEW

A plaintiff who sues the State must establish the State's consent to sue. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex. 1999). Otherwise, sovereign immunity from suit defeats a trial court's subject-matter jurisdiction. *Id.* The State may assert sovereign immunity from suit in a plea to the jurisdiction. *Id.* A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction, thus defeating "a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000). Subject-matter jurisdiction is essential to the authority of a court to decide a case. *See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex. 1998). We review a trial court's ruling on a jurisdictional plea de novo, construing the pleadings in the plaintiff's favor and looking to the pleader's intent. *Id.*

## III. APPLICABLE LAW

Here, the legislature granted Gulf Energy permission to sue through legislative grant, as set forth in section 107.002 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 107.002 (Vernon 2005). Neither party disputes that the state waived its immunity from suit. It is the extent of the waiver that is in controversy.

The statute provides that the claimant may sue for "any relief to which the claimant is entitled as a result of the described claim." *Id*. § 107.002(a)(1). "The chief distinction between a resolution and a law seems to be that the former is used whenever the legislative body passing it wishes to merely express an opinion as to some given matter or thing, and

is only to have a temporary effect on such particular thing; while by the latter it is intended to permanently direct and control matters applying to persons or things in general." *Conley v. Tex. Div. of United Daughters of the Confederacy*, 164 S.W. 24, 26 (Tex. Civ. App.–Austin 1913, writ ref'd). Joint resolutions are statements of the legislature's intent as a body and are interpreted as statutes. *See, e.g., Tex. & Pac. Ry. Co. v. State*, 78 S.W.2d 580, 582 (1935) (utilizing the analysis for statutory construction to interpret a joint resolution). Resolutions granting permission to sue the State affect only the legal rights of the parties to the authorized suit and do not become the general law of the State. *State v. John R. Phenix & Assocs., Inc.*, 6 S.W.3d 288, 292 (Tex. App.–Houston [14th Dist.] 1998, no pet.).

Legislative consent for suit or any sovereign immunity waiver must be "by clear and unambiguous language." *Univ. of Tex. Med. Branch at Galveston v. York,* 871 S.W.2d 175, 177 (Tex. 1994); *Tex. S. Univ. v. State St. Bank*, 212 S.W.3d 893, 901 (Tex. App.–Houston [1st Dist.] 2007, pet. denied). The legislature is in a better position than the courts to weigh conflicting "public policies associated with waiving immunity and exposing the government to increased liability, the burden of which the general public must ultimately bear." *Tex. S. Univ.*, 212 S.W.3d at 901. The State neither creates nor admits liability by granting permission to be sued. *Id.* As a basic premise, a state may be sued only with its consent and in the manner indicated by that consent. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 (Tex. 2003). Because consent "is pivotal to a waiver of sovereign immunity, it is important to consider the manner in which a sovereign conveys its consent

to be sued." *Id*. at 695. When construing a statute that purportedly waives immunity, ambiguities are resolved by retaining immunity. *Id*. at 697. It is proper for a trial court to dismiss claims over which it does not have subject-matter jurisdiction but retain claims in the same case over which it has jurisdiction. *Thomas v. Long*, 207 S.W.3d 334, 338 (Tex. 2006); *Am. Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 805 (Tex. 2001).

Governmental immunity protects governmental units from lawsuits for money damages unless the legislature expressly consents. *Gen. Servs. Comm'n v. Little Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001). Chapter 107 has been typically utilized in situations seeking redress in breach of contract cases against the State. *See id*. at 597. The legislature has also allowed waiver by resolution in at least one lawsuit asserting causes of action for intentional, grossly negligent, or negligent failure to provide a deaf child with educational services. *Lindsey v. State*, 811 S.W.2d 731, 732 (Tex. App.–Austin 1991, writ denied).[2]

## IV. ANALYSIS

The Commission argues on appeal that any waiver effected in chapter 107 is limited in scope. It urges that a claim not mentioned in the joint resolution is one that the legislature never considered, and thus, it could not have intended to waive immunity from it. It states that Joint Resolution 72 bases its waiver of immunity from suit on the fact that the Commission entered into an agreement with Gulf Energy on which Gulf Energy relied to its

---

[2]The court of appeals held that the senate concurrent resolution gave parents permission to bring suit against the State but did not waive immunity from liability, and granted the State's summary judgment based upon governmental immunity. *Lindsey v. State*, 811 S.W.2d 731, 733 (Tex. App.–Austin 1991, writ denied).

6

detriment. The Commission urges that there is no question that the legislature has waived its sovereign immunity in Joint Resolution 72, but it states that immunity has been waived solely with respect to the contract claims. It claims that Joint Resolution 72 does not waive immunity with respect to Gulf Energy's torts claims or its request for exemplary damages. Gulf Energy, on the other hand, urges in its brief that Joint Resolution 72 plainly grants it permission to sue the Commission for wrongful plugging of the well and that paragraphs 4 and 6 of the resolution, which refer to a settlement and forbearance agreement, never tie any provision in the named agreement to any basis on which the plugging of the well might be considered "wrongful."

We begin by not disturbing the parties' consensus that there was a waiver of immunity as it pertains to Gulf Energy's pleading of breach of contract. The parties are in agreement that the legislature has waived its immunity with respect to its breach of contract claims, and we believe that if the wrongful plugging of the well was a breach of the contract between the two parties, immunity from suit has been waived for the contractual claim. We also conclude that chapter 107 precludes the legislature from waiving immunity from suit for exemplary damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 107.002(a)(10). The plain language of the statute states that the legislature lacks the power to waive immunity from suit for exemplary damages without enacting a statute. *Id.* Thus, the legislature could not waive immunity for exemplary damages, and the trial court erred in failing to grant the Commission's plea to the jurisdiction with respect to the claim for exemplary damages. *Id.* § 107.002(a)(10). We sustain the Commission's fourth issue.

In our review of the remaining claims, which sound in tort, we look to the statute, the specific language of the joint resolution, as well as the pleadings to determine waiver. The plain language of the statute permits suit against the state "for any relief to which the claimant is entitled as a result of the *described claim*." *Id.* § 107.002(a)(1) (emphasis added). In other words, we must determine whether the "described claim" in Joint Resolution 72 is only a breach of contract claim as the Commission suggests, or whether it encompass the tort claims as Gulf Energy argues. The cause of action alleged must be proven under the law of this state as in other civil suits. *Id.* § 107.002(a)(6). Further, the state also does not grant permission to recover exemplary or punitive damages pursuant to statute allowing for waiver by resolution. *Id.* § 107.002(a)(10).

Joint Resolution 72 states, in pertinent part:

> (2) One of these orphaned wellbores is designated "State Tract 708-S No. 5" . . .

> (4) In a conference on May 19, 2008, representatives from Gulf Energy Exploration Corp., the Railroad Commission of Texas, the Office of the Attorney General of the State of Texas, American Coastal Energy, Inc., and bankruptcy counsel for American Coastal Energy, Inc., reached a tentative settlement and forbearance agreement, pending approval of the commission, attorney general, and bankruptcy court;

> (5) On or about May 25, 2008, the Railroad Commission of Texas *wrongfully plugged and abandoned State Tract 708-S No. 5* using Superior Energy Service, Inc., as the plugging contractor;

> (6) By June 9, 2008, all parties to the agreement of May 19, 2008, had signed the settlement and forbearance agreement; . . .

8

(13) On December 30, 2008, Gulf Energy Exploration Corp. commenced operation on State Tract 708-S No. 5 in anticipation of completing workover operations and placing the well in production ahead of the February 6, 2009, deadline *only to discover that State Tract 7-8-S No. 5 had been wrongfully plugged*;

(14) One week later, on January 9, 2009, representatives of *Gulf Energy Exploration Corp. and the Railroad Commission of Texas met to discuss the wrongful plugging of State Tract 708-S No. 5*;

(15) On January 14, 2009, representatives of Gulf Energy Exploration Corp. and the Railroad Commission of Texas met again, and *the commission admitted to wrongfully plugging State Tract 708-S No. 5*; . . .

(17) Gulf Energy Exploration Corp. has calculated the known cost to unplug and drill out State Tract 708-S No. 5 to 2,000 feet to be at least $1,596,650;

(18) Due to the manner in which State Tract 708-S No. 5 was plugged, a very real risk exists that substantial, unforeseen problems may emerge in unplugging and drilling out the well and the amount of contingency to use in calculating total costs cannot be estimated with any degree of certainty;

(19) Given the degree of uncertainty in calculating the contingency, Gulf Exploration Corp. has used a range of 15 to 50 percent of the known costs, estimating the total cost to unplug and drill out State Tract 708-S No. 5 to 2,000 feet to be anywhere from $1,836,200 to $2,395,000; however Gulf Energy Exploration Corp also recognizes, based on experience, that any cost overrun could exceed the amount of known costs by 100 percent or more and could result in the abandonment of the well; . . .

(23) Gulf Energy Exploration Corp. respectfully requests that the Railroad Commission of Texas provide the funds necessary to proceed with a risk-free alternative like the proposal submitted by Applied Drilling Technology, Inc.;

(24) Gulf Energy Exploration Corp. also requests a timely response from the Railroad Commission of Texas in providing these funds considering the corporation's lost opportunity in the well due to the wrongful plugging of State Tract-S No. 5, now therefore, be it

RESOLVED by the Legislature of the State of Texas, That Gulf Energy Exploration Corp., is granted permission to sue the State of Texas and the Railroad Commission subject to Chapter 107, Civil Practice and Remedies Code; and be it further

RESOLVED, That the total of all damages awarded in the suit authorized by this resolution, including any courts costs, attorney's fees, and prejudgment interest awarded under the law, may not exceed $2,500,000 and that Gulf Energy Exploration Corp. may not plead an amount in excess of that amount in any suit authorized by this resolution, . . . .

(Emphasis added.)

The unambiguous language of the resolution states that Gulf Energy was granted permission to sue and resolved that the total of all damages, including court costs, attorney's fees and prejudgment interest could not exceed $2,500,000 and that Gulf Energy may not plead an amount in excess of that limit. The scope of Joint Resolution 72 allows Gulf Energy to sue for the "wrongful plugging" and abandoning of well 708-No. 5. Joint Resolution 72 places an objective limitation on the State's potential liability. It says that there may not be a recovery in excess of $2,500,000. As in those cases where immunity is waived by explicit legislative enactment, the legislature, through Joint Resolution 72, has created what the case law deems a "simultaneous measure" to provide an "objective limitation to the State's liability." *Taylor*, 106 S.W.3d at 698. The fact that Joint Resolution 72 specifically provided an objective limitation on the State's potential liability further

evidences an intent to waive immunity. Clearly then, there is no question about the fact that the Legislature intended to waive immunity and limit its damages.

However, we find no specific language in the resolution limiting the causes of action that could be pleaded by Gulf Energy to a breach of contract claim. The resolution mentions numerous times that there was a "wrongful plugging" and limits the damages incurred as a result of the wrongful plugging. We see no limitation, however, in the language of the resolution that would preclude the pleading of a specific cause of action by which Gulf Energy may attempt recovery for the admitted wrongful plugging of the well. In fact, the description of the "described claim" in the text of the resolution does not indicate a breach of contract claim exclusively. While the Commission claims that the wrongful plugging of the well encompasses only a violation of a contractual undertaking, the plain language of the resolution does not place such a limitation. "Wrongful plugging" could reasonably support a claim for negligence. Gulf Energy pleaded that the defendants were obligated to perform their plugging and positioning and scanning services in accordance with industry standards and failed to abide by those standards. Gulf Energy also urges that the defendant breached its duty to use ordinary care in exercising control over contractors and employees. The joint resolution states that the well was wrongfully plugged after an agreement was reached. Thus, the resolution could describe a claim for negligence as well as breach of contract. Further, the Commission has conceded that the joint resolution grants permission to sue for breach of contract even though the resolution does not specifically refer to the elements of a cause of action for breach of contract.

11

The Commission urges that the term "wrongful plugging" is not a common-law term of art in an oil and gas case. It argues that this term has never been used in a reported case. We note, however, that the term "wrongful plugging" was the term-of-art the legislature chose to use in granting permission to sue, and it is not within our province to change the wording in a joint resolution. Under the plain language of the resolution, the term does not appear to exclusively refer to a contractual claim, but a claim concerning wrongful plugging, which could also encompass Gulf Energy's claims of negligence. While the Commission argues that Joint Resolution 72 does not waive immunity from suit for claims based on allegations that the joint resolution does not cite, the plain language of the resolution does not so limit the waiver.

The Commission also urges that the language of the resolution does not contain the elements of a cause of action for fraud or negligent misrepresentation. We agree. But, we look to whether the resolution *describes* a claim for either of these causes of action. *See id.* § 107.002(a)(1). A joint resolution waives immunity by *describing* a claim. *Id.* Gulf Energy's pleadings urge actual and constructive fraud by making material misrepresentations and omissions upon which Gulf Energy relied. Most notably, the Commission promised Gulf that it would postpone plugging efforts and stated that it had not plugged the 708-No.5, and Gulf Energy relied on the representation to its detriment. With respect to negligent misrepresentation, Gulf Energy urges the same factual claims as it used to support its fraud pleading.

12

In reviewing the language of Joint Resolution 72, there is no verbiage describing a a situation in which the Commission promised it would postpone plugging efforts and stated that it had not plugged the 708-No. 5. The plain language of Joint Resolution 72, instead, suggests that there was a wrongful plugging, whether it was a negligent wrongful plugging or a breach of contract as the Commission has conceded. The same plain language does not describe a claim for fraud or negligent misrepresentation. Thus, we sustain the Commission's first issue, in part, and we overrule it, in part. We hold that Joint Resolution 72 did not describe claims for fraud or negligent misrepresentation, but did describe claims for negligence. The Commission has already conceded that Joint Resolution 72 contained language describing a breach of contract claim.

By the Commission's second issue, it urges that a chapter 107 resolution cannot change the common law and the legislature should not be able to waive immunity for tort claims that do not exist at common law. It then claims that Texas common law provides that the State is not subject to: "(1) respondeat superior liability; or (2) intentional-tort liability absent a statute creating an obligation." Thus, the Commission concludes that the legislature could not have waived immunity from suit for Gulf Energy's respondeat superior and intentional tort claims by means of a joint resolution. The only intentional torts pleaded by Gulf Energy are actual and constructive fraud and we have held that Joint Resolution 72 does not describe a claim for the fraud claim.

The Commission also argued that absent a statute authorizing respondeat superior liability, a joint resolution cannot create substantive liability for respondeat superior tort claims. Here, Joint Resolution 72 is not a waiver of liability, it is merely a consent by the State allowing Gulf Energy to bring suit for no more than a specified amount of damages. The Commission argues that the Legislature would have to pass a statute like the Tort

13

Claims Act to change substantive common law in order to allow Gulf Energy to recover. The statute grants permission to sue the state for "any relief to which the claimant is entitled as a result of the described claim." *Id.* § 107.002 (a)(1). The resolution does not purport to change substantive law to create new obligations. It merely entitles Gulf Energy to sue for any relief to which it may be entitled to as a result of the described claim. We overrule issue two.

## V. Conclusion

We reverse the trial court's denial of the plea to the jurisdiction with respect to Gulf Energy's claim for exemplary damages as the State may not grant permission to recover exemplary or punitive damages pursuant to the statute. *Id*. § 107.002 (a)(10). We also reverse the court's denial of the plea to the jurisdiction with respect to Gulf Energy's claim for fraud and negligent misrepresentation and remand to the trial court for actions consistent with this opinion. The trial court's denial of the plea to the jurisdiction is otherwise affirmed.


ROSE VELA
Justice


Delivered and filed the
5th day of August, 2010.

14