NUMBER 13-10-015-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 

 

RAILROAD COMMISSION OF TEXAS, Appellant,

 

v. 


GULF ENERGY EXPLORATION CORPORATION, Appellee.

 


On appeal from the 267th District Court 

of Calhoun County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Benavides and Vela


Memorandum Opinion by Justice Vela



 This is an interlocutory appeal from a trial court order denying appellant, the
Railroad Commission of Texas's ("the Commission"), plea to the jurisdiction. By four
issues, the Commission urges that a joint resolution by the Texas Legislature granting
appellee, Gulf Energy Exploration Corporation ("Gulf Energy"), permission to sue the State
of Texas, subject to chapter 107 of the Texas Civil Practice and Remedies Code, with
respect to the wrongful plugging of State Tract 708-S No. 5 ("708-No. 5") was a limited
waiver of sovereign immunity. The Commission also initially argued, by its third issue, that
Gulf Energy's claims were barred because it lacked standing, but withdrew its standing
argument in its reply brief. (1) We affirm, in part, and reverse and remand, in part. 

I. Background

 Gulf Energy filed suit against the Commission, Superior Energy Services, L.L.C.,
and Fugro Chance, Inc., for plugging and abandoning well 708-No. 5 after agreeing it
would not do so. Gulf Energy urged causes of action for breach of contract, fraud,
negligent misrepresentation, negligence, and gross negligence.

 Gulf Energy is in the business of acquiring leases for the purpose of oil and gas
production. In February 2007, it acquired the 708-No. 5. American Coastal Energy
Corporation ("ACE") was the operator. As operator, ACE had the responsibility to pay the
cost of plugging and abandoning the well when it stopped producing. By 2008, the
Commission declared the 708-No. 5 well, in addition to others, to be "orphan wells" that
needed to be plugged and abandoned. ACE was unable to pay the cost of plugging the
well and filed for bankruptcy. Gulf Energy agreed to provide a cash deposit of $400,000
to satisfy the eventual cost of plugging and abandoning the 708-No. 5, as well as other
wells on the lease. Gulf Energy was also successful in rescinding the plugging order and
it took over production. State Tract 707-S #5 ("707-No. 5"), located on the tract adjacent
to the tract on which the 708-No. 5 was located, was still scheduled to be plugged and
abandoned. However, Superior, through its subcontractor, Fugro, plugged the 708-No. 5,
rather than the 707-No. 5. At the time the 708-No. 5 was plugged, Gulf Energy pleaded
that there were personnel from Superior, Fugro and the Commission on board the vessel
that traveled to the 708 No.-5., rather than the 707-No. 5. The Commission admitted that
the plugging and abandoning of tract 708-No. 5 was wrongful. Gulf Energy sought a
legislative waiver of the Commission's sovereign immunity from suit, which was granted. 
See Tex. S. Con. Res. 72, 81st Leg., R.S. (2009) ("Joint Resolution 72"). 

 Thereafter, Gulf Energy filed suit against the Commission, Superior Energy
Services, and Fugro. The Commission filed a plea to the jurisdiction on the ground that
Joint Resolution 72 waived the Commission's immunity for some, but not all of Gulf
Energy's claims. Specifically, the Commission claims a "waiver of immunity only with
respect to Gulf's breach of contract claim, and does not clearly and unambiguously waive
immunity with respect to Gulf's tort claims." The trial court denied the plea, and this
interlocutory appeal ensued. 


II. Standard of Review 

 A plaintiff who sues the State must establish the State's consent to sue. Tex. Dep't
of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999). Otherwise, sovereign immunity from
suit defeats a trial court's subject-matter jurisdiction. Id. The State may assert sovereign
immunity from suit in a plea to the jurisdiction. Id. A plea to the jurisdiction is a dilatory
plea that seeks dismissal of a case for lack of subject-matter jurisdiction, thus defeating "a
cause of action without regard to whether the claims asserted have merit." Bland Indep.
Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). Subject-matter jurisdiction is essential
to the authority of a court to decide a case. See Mayhew v. Town of Sunnyvale, 964
S.W.2d 922, 928 (Tex. 1998). We review a trial court's ruling on a jurisdictional plea de
novo, construing the pleadings in the plaintiff's favor and looking to the pleader's intent. 
Id.

III. Applicable Law 

 Here, the legislature granted Gulf Energy permission to sue through legislative grant,
as set forth in section 107.002 of the Texas Civil Practice and Remedies Code. See Tex.
Civ. Prac. & Rem. Code Ann. § 107.002 (Vernon 2005). Neither party disputes that the
state waived its immunity from suit. It is the extent of the waiver that is in controversy. The statute provides that the claimant may sue for "any relief to which the claimant
is entitled as a result of the described claim." Id. § 107.002(a)(1). "The chief distinction
between a resolution and a law seems to be that the former is used whenever the legislative
body passing it wishes to merely express an opinion as to some given matter or thing, and
is only to have a temporary effect on such particular thing; while by the latter it is intended
to permanently direct and control matters applying to persons or things in general." Conley
v. Tex. Div. of United Daughters of the Confederacy, 164 S.W. 24, 26 (Tex. Civ.
App.-Austin 1913, writ ref'd). Joint resolutions are statements of the legislature's intent as
a body and are interpreted as statutes. See, e.g., Tex. & Pac. Ry. Co. v. State, 78 S.W.2d
580, 582 (1935) (utilizing the analysis for statutory construction to interpret a joint
resolution). Resolutions granting permission to sue the State affect only the legal rights of
the parties to the authorized suit and do not become the general law of the State. State v.
John R. Phenix & Assocs., Inc., 6 S.W.3d 288, 292 (Tex. App.-Houston [14th Dist.] 1998,
no pet.). 

 Legislative consent for suit or any sovereign immunity waiver must be "by clear and
unambiguous language." Univ. of Tex. Med. Branch at Galveston v. York, 871 S.W.2d 175,
177 (Tex. 1994); Tex. S. Univ. v. State St. Bank, 212 S.W.3d 893, 901 (Tex. App.-Houston
[1st Dist.] 2007, pet. denied). The legislature is in a better position than the courts to weigh
conflicting "public policies associated with waiving immunity and exposing the government
to increased liability, the burden of which the general public must ultimately bear." Tex. S.
Univ., 212 S.W.3d at 901. The State neither creates nor admits liability by granting
permission to be sued. Id. As a basic premise, a state may be sued only with its consent
and in the manner indicated by that consent. Wichita Falls State Hosp. v. Taylor, 106
S.W.3d 692, 694 (Tex. 2003). Because consent "is pivotal to a waiver of sovereign
immunity, it is important to consider the manner in which a sovereign conveys its consent
to be sued." Id. at 695. When construing a statute that purportedly waives immunity,
ambiguities are resolved by retaining immunity. Id. at 697. It is proper for a trial court to
dismiss claims over which it does not have subject-matter jurisdiction but retain claims in
the same case over which it has jurisdiction. Thomas v. Long, 207 S.W.3d 334, 338 (Tex.
2006); Am. Motorists Ins. Co. v. Fodge, 63 S.W.3d 801, 805 (Tex. 2001).

 Governmental immunity protects governmental units from lawsuits for money
damages unless the legislature expressly consents. Gen. Servs. Comm'n v. Little Tex
Insulation Co., 39 S.W.3d 591, 594 (Tex. 2001). Chapter 107 has been typically utilized in
situations seeking redress in breach of contract cases against the State. See id. at 597. 
The legislature has also allowed waiver by resolution in at least one lawsuit asserting
causes of action for intentional, grossly negligent, or negligent failure to provide a deaf child
with educational services. Lindsey v. State, 811 S.W.2d 731, 732 (Tex. App.-Austin 1991,
writ denied). (2)

IV. Analysis

 The Commission argues on appeal that any waiver effected in chapter 107 is limited
in scope. It urges that a claim not mentioned in the joint resolution is one that the legislature
never considered, and thus, it could not have intended to waive immunity from it. It states
that Joint Resolution 72 bases its waiver of immunity from suit on the fact that the
Commission entered into an agreement with Gulf Energy on which Gulf Energy relied to its
detriment. The Commission urges that there is no question that the legislature has waived
its sovereign immunity in Joint Resolution 72, but it states that immunity has been waived
solely with respect to the contract claims. It claims that Joint Resolution 72 does not waive
immunity with respect to Gulf Energy's torts claims or its request for exemplary damages. 
Gulf Energy, on the other hand, urges in its brief that Joint Resolution 72 plainly grants it
permission to sue the Commission for wrongful plugging of the well and that paragraphs 4
and 6 of the resolution, which refer to a settlement and forbearance agreement, never tie
any provision in the named agreement to any basis on which the plugging of the well might
be considered "wrongful." 

 We begin by not disturbing the parties' consensus that there was a waiver of
immunity as it pertains to Gulf Energy's pleading of breach of contract. The parties are in
agreement that the legislature has waived its immunity with respect to its breach of contract
claims, and we believe that if the wrongful plugging of the well was a breach of the contract
between the two parties, immunity from suit has been waived for the contractual claim. We
also conclude that chapter 107 precludes the legislature from waiving immunity from suit
for exemplary damages. See Tex. Civ. Prac. & Rem. Code Ann. § 107.002(a)(10). The
plain language of the statute states that the legislature lacks the power to waive immunity
from suit for exemplary damages without enacting a statute. Id. Thus, the legislature could
not waive immunity for exemplary damages, and the trial court erred in failing to grant the
Commission's plea to the jurisdiction with respect to the claim for exemplary damages. Id.
§ 107.002(a)(10). We sustain the Commission's fourth issue.

 In our review of the remaining claims, which sound in tort, we look to the statute, the
specific language of the joint resolution, as well as the pleadings to determine waiver. The
plain language of the statute permits suit against the state "for any relief to which the
claimant is entitled as a result of the described claim." Id. § 107.002(a)(1) (emphasis
added). In other words, we must determine whether the "described claim" in Joint
Resolution 72 is only a breach of contract claim as the Commission suggests, or whether
it encompass the tort claims as Gulf Energy argues. The cause of action alleged must be
proven under the law of this state as in other civil suits. Id. § 107.002(a)(6). Further, the
state also does not grant permission to recover exemplary or punitive damages pursuant
to statute allowing for waiver by resolution. Id. § 107.002(a)(10). 

 Joint Resolution 72 states, in pertinent part:

 

 (2) One of these orphaned wellbores is designated
"State Tract 708-S No. 5" . . .

 

 (4) In a conference on May 19, 2008, representatives
from Gulf Energy Exploration Corp., the Railroad Commission
of Texas, the Office of the Attorney General of the State of
Texas, American Coastal Energy, Inc., and bankruptcy counsel
for American Coastal Energy, Inc., reached a tentative
settlement and forbearance agreement, pending approval of the
commission, attorney general, and bankruptcy court;

 

 (5) On or about May 25, 2008, the Railroad Commission
of Texas wrongfully plugged and abandoned State Tract 708-S
No. 5 using Superior Energy Service, Inc., as the plugging
contractor;

 

 (6) By June 9, 2008, all parties to the agreement of May
19, 2008, had signed the settlement and forbearance
agreement; . . . 


 (13) On December 30, 2008, Gulf Energy Exploration
Corp. commenced operation on State Tract 708-S No. 5 in
anticipation of completing workover operations and placing the
well in production ahead of the February 6, 2009, deadline only
to discover that State Tract 7-8-S No. 5 had been wrongfully
plugged; 

 

 (14) One week later, on January 9, 2009, representatives
of Gulf Energy Exploration Corp. and the Railroad Commission
of Texas met to discuss the wrongful plugging of State Tract
708-S No. 5;

 

 (15) On January 14, 2009, representatives of Gulf
Energy Exploration Corp. and the Railroad Commission of
Texas met again, and the commission admitted to wrongfully
plugging State Tract 708-S No. 5; . . .

 

 (17) Gulf Energy Exploration Corp. has calculated the
known cost to unplug and drill out State Tract 708-S No. 5 to
2,000 feet to be at least $1,596,650;


 (18) Due to the manner in which State Tract 708-S No.
5 was plugged, a very real risk exists that substantial,
unforeseen problems may emerge in unplugging and drilling out
the well and the amount of contingency to use in calculating
total costs cannot be estimated with any degree of certainty;


 (19) Given the degree of uncertainty in calculating the
contingency, Gulf Exploration Corp. has used a range of 15 to
50 percent of the known costs, estimating the total cost to
unplug and drill out State Tract 708-S No. 5 to 2,000 feet to be
anywhere from $1,836,200 to $2,395,000; however Gulf Energy
Exploration Corp also recognizes, based on experience, that
any cost overrun could exceed the amount of known costs by
100 percent or more and could result in the abandonment of the
well; . . .

 

 (23) Gulf Energy Exploration Corp. respectfully requests
that the Railroad Commission of Texas provide the funds
necessary to proceed with a risk-free alternative like the
proposal submitted by Applied Drilling Technology, Inc.;

 

 (24) Gulf Energy Exploration Corp. also requests a timely
response from the Railroad Commission of Texas in providing
these funds considering the corporation's lost opportunity in the
well due to the wrongful plugging of State Tract-S No. 5, now
therefore, be it 

 

 RESOLVED by the Legislature of the State of Texas,
That Gulf Energy Exploration Corp., is granted permission to
sue the State of Texas and the Railroad Commission subject to
Chapter 107, Civil Practice and Remedies Code; and be it
further 

 

 RESOLVED, That the total of all damages awarded in
the suit authorized by this resolution, including any courts costs,
attorney's fees, and prejudgment interest awarded under the
law, may not exceed $2,500,000 and that Gulf Energy
Exploration Corp. may not plead an amount in excess of that
amount in any suit authorized by this resolution, . . . . 

(Emphasis added.)

 The unambiguous language of the resolution states that Gulf Energy was granted
permission to sue and resolved that the total of all damages, including court costs,
attorney's fees and prejudgment interest could not exceed $2,500,000 and that Gulf Energy
may not plead an amount in excess of that limit. The scope of Joint Resolution 72 allows
Gulf Energy to sue for the "wrongful plugging" and abandoning of well 708-No. 5. Joint
Resolution 72 places an objective limitation on the State's potential liability. It says that
there may not be a recovery in excess of $2,500,000. As in those cases where immunity
is waived by explicit legislative enactment, the legislature, through Joint Resolution 72, has
created what the case law deems a "simultaneous measure" to provide an "objective
limitation to the State's liability." Taylor, 106 S.W.3d at 698. The fact that Joint Resolution
72 specifically provided an objective limitation on the State's potential liability further
evidences an intent to waive immunity. Clearly then, there is no question about the fact that
the Legislature intended to waive immunity and limit its damages. 

 However, we find no specific language in the resolution limiting the causes of action
that could be pleaded by Gulf Energy to a breach of contract claim. The resolution
mentions numerous times that there was a "wrongful plugging" and limits the damages
incurred as a result of the wrongful plugging. We see no limitation, however, in the
language of the resolution that would preclude the pleading of a specific cause of action by
which Gulf Energy may attempt recovery for the admitted wrongful plugging of the well. In
fact, the description of the "described claim" in the text of the resolution does not indicate
a breach of contract claim exclusively. While the Commission claims that the wrongful
plugging of the well encompasses only a violation of a contractual undertaking, the plain
language of the resolution does not place such a limitation. "Wrongful plugging" could
reasonably support a claim for negligence. Gulf Energy pleaded that the defendants were
obligated to perform their plugging and positioning and scanning services in accordance
with industry standards and failed to abide by those standards. Gulf Energy also urges that
the defendant breached its duty to use ordinary care in exercising control over contractors
and employees. The joint resolution states that the well was wrongfully plugged after an
agreement was reached. Thus, the resolution could describe a claim for negligence as well
as breach of contract. Further, the Commission has conceded that the joint resolution
grants permission to sue for breach of contract even though the resolution does not
specifically refer to the elements of a cause of action for breach of contract. 

 The Commission urges that the term "wrongful plugging" is not a common-law term
of art in an oil and gas case. It argues that this term has never been used in a reported
case. We note, however, that the term "wrongful plugging" was the term-of-art the
legislature chose to use in granting permission to sue, and it is not within our province to
change the wording in a joint resolution. Under the plain language of the resolution, the
term does not appear to exclusively refer to a contractual claim, but a claim concerning
wrongful plugging, which could also encompass Gulf Energy's claims of negligence. While
the Commission argues that Joint Resolution 72 does not waive immunity from suit for
claims based on allegations that the joint resolution does not cite, the plain language of the
resolution does not so limit the waiver. 

 The Commission also urges that the language of the resolution does not contain the
elements of a cause of action for fraud or negligent misrepresentation. We agree. But, we
look to whether the resolution describes a claim for either of these causes of action. See
id. § 107.002(a)(1). A joint resolution waives immunity by describing a claim. Id. Gulf
Energy's pleadings urge actual and constructive fraud by making material
misrepresentations and omissions upon which Gulf Energy relied. Most notably, the
Commission promised Gulf that it would postpone plugging efforts and stated that it had not
plugged the 708-No.5, and Gulf Energy relied on the representation to its detriment. With
respect to negligent misrepresentation, Gulf Energy urges the same factual claims as it
used to support its fraud pleading. 


 In reviewing the language of Joint Resolution 72, there is no verbiage describing a

a situation in which the Commission promised it would postpone plugging efforts and stated
that it had not plugged the 708-No. 5. The plain language of Joint Resolution 72, instead,
suggests that there was a wrongful plugging, whether it was a negligent wrongful plugging
or a breach of contract as the Commission has conceded. The same plain language does
not describe a claim for fraud or negligent misrepresentation. Thus, we sustain the
Commission's first issue, in part, and we overrule it, in part. We hold that Joint Resolution
72 did not describe claims for fraud or negligent misrepresentation, but did describe claims
for negligence. The Commission has already conceded that Joint Resolution 72 contained
language describing a breach of contract claim.

 By the Commission's second issue, it urges that a chapter 107 resolution cannot
change the common law and the legislature should not be able to waive immunity for tort
claims that do not exist at common law. It then claims that Texas common law provides that
the State is not subject to: "(1) respondeat superior liability; or (2) intentional-tort liability
absent a statute creating an obligation." Thus, the Commission concludes that the
legislature could not have waived immunity from suit for Gulf Energy's respondeat superior
and intentional tort claims by means of a joint resolution. The only intentional torts pleaded
by Gulf Energy are actual and constructive fraud and we have held that Joint Resolution 72
does not describe a claim for the fraud claim.

 The Commission also argued that absent a statute authorizing respondeat superior
liability, a joint resolution cannot create substantive liability for respondeat superior tort
claims. Here, Joint Resolution 72 is not a waiver of liability, it is merely a consent by the
State allowing Gulf Energy to bring suit for no more than a specified amount of damages. 
The Commission argues that the Legislature would have to pass a statute like the Tort
Claims Act to change substantive common law in order to allow Gulf Energy to recover. 
The statute grants permission to sue the state for "any relief to which the claimant is entitled
as a result of the described claim." Id. § 107.002 (a)(1). The resolution does not purport
to change substantive law to create new obligations. It merely entitles Gulf Energy to sue
for any relief to which it may be entitled to as a result of the described claim. We overrule
issue two.V. Conclusion

 We reverse the trial court's denial of the plea to the jurisdiction with respect to Gulf
Energy's claim for exemplary damages as the State may not grant permission to recover
exemplary or punitive damages pursuant to the statute. Id. § 107.002 (a)(10). We also
reverse the court's denial of the plea to the jurisdiction with respect to Gulf Energy's claim
for fraud and negligent misrepresentation and remand to the trial court for actions consistent
with this opinion. The trial court's denial of the plea to the jurisdiction is otherwise affirmed.


 

 ROSE VELA

 Justice

 

Delivered and filed the

5th day of August, 2010.





 
1. Gulf Energy pleaded that the lease went into effect in February 2007. The Commission states that
as "long as [the Commission] maintains that the lease was entered into in February 2007, Gulf Energy
satisfies the standing requirement for bringing injury-to-property claims. Accordingly, the Commission
withdraws its argument that Gulf Energy lacks standing based on these pleadings." 
2. The court of appeals held that the senate concurrent resolution gave parents permission to bring suit
against the State but did not waive immunity from liability, and granted the State's summary judgment based
upon governmental immunity. Lindsey v. State, 811 S.W.2d 731, 733 (Tex. App.-Austin 1991, writ denied).